CULP v. LOVE.

(December 22, 1900.)

*Contracts—Restraint of Trade—Enforcement—Competition.*

A contract whereby persons enter into a combination to destroy competition in trade in the necessities of life is against public policy and illegal.

CIVIL ACTION by James P. Culp against R. C. G. Love & Son, and Edgar Love & Co., heard by Judge *H. R. Starbuck* and a jury, at August (Special) Term, 1900, of GASTON Superior Court.

EXHIBIT A.

Articles of agreement between R. C. G. Love & Son, and Edgar Love & Co., and James P. Culp, made this the 11th day of June, 1896, to go in effect June 15, 1896.

Parties of the first part, R. C. G. Love & Son, as also parties of the second part, Edgar Love & Co., hereby bind and obligate themselves, parties of the first part and second part, to pay James P. Culp, party of third part, monthly, the sum of $15 for the term of seventeen and one-half months, making sum total of $262.50, and in consideration of the above-named sum, $15 per month, for time above-named, seventeen and one-half months, James P. Culp, party of the third part, binds and obligates himself not to sell, or offer for sale, meats, lard, and oil in York County, S. C., Gaston, Lincoln, Catawba, Caldwell, and Cleveland counties, North Carolina, during term of this contract. As further consideration to James P. Culp, party of the third part, not to sell, or offer for sale, meats, lard, or oil, in counties above named, and for term of seventeen and one-half months, R. C. G. Love & Son, parties of the first part, and Edgar Love & Co., parties of the

second part, do hereby bind and obligate themselves not to sell, or offer for sale, flour in any quantity at wholesale to merchants in excess of two thousand pounds to any one merchant in counties above named, during term of this contract, commencing June 10, 1896, and continuing in full force and effect to January 1, 1898.

It is further promised and agreed by R. C. G. Love & Son, parties of the first part, and also Edgar Love & Co., parties of the second part, to obtain for party of the third part, James P. Culp, the sale of Sweetwater Mill Company's flour, Sweetwater, Tennessee, on line of railroads below named, for the full term of this contract, beginning June 15, 1896, and lasting until January 1, 1898. Commencing at Pleasant Ridge, on Chester and Lenoir Railroad, including all the towns on said railroad to, and including, Lenoir, N. C.; on Carolina Central Railroad Company, including and beginning at Mount Holly; N. C., with, and including, every town and station between Mount Holly and Rutherfordton, N. C., and also Charlotte and Atlanta Piedmont Air Line Railroad, including and beginning at Belmont, N. C., including each and every town and station between Belmont and Blacksburg, S. C.

It is further agreed and understood that party of the third part, James P. Culp, is not to neglect sale of Cumberland Mills flour for that of Sweetwater Mills, nor is party of third part to push sale of said Sweetwater Mills flour further than it may be to his interest to do so.

It is further agreed by party of the third part, James P. Culp, in consideration of R. C. G. Love & Son, and Edgar Love & Co., parties of the first and second part, obtaining for him the sale of Sweetwater Mills flour in territory above named, and for term above mentioned, and in further consideration that the said R. C. G. Love & Son, and Edgar Love

& Co., are not to sell, or offer for sale, flour at wholesale in excess of two thousand pounds to any one merchant, the said James P. Culp, party of the third part, is and does hereby bind and obligate himself to divide brokerage with R. C. G. Love & Son, and Edgar Love & Co., on any and all sales of flour made for Sweetwater Mill Company during term of this contract in territory named.

In further consideration of the full and faithful performance of this contract, we, the parties of the first part, R. C. G. Love & Son, and Edgar Love & Co., parties of the second part, and James P. Culp, party of the third part, do hereby bind and obligate ourselves one to the other the full and faithful performance of this contract, and failure on the part of one of the principals, or his agent, to fulfill this contract to the letter, party, or parties, violating this contract is due to the other party, and hereby binds himself, or themselves, to pay the other party the sum of $500.

Witness our hands and seals, this 11th day of June, 1896.

| | |
|---|---|
| R. C. G. LOVE & SON. | (Seal.) |
| EDGAR LOVE & CO. | (Seal.) |
| JAMES P. CULP. | (Seal.) |

Attest:  T. L. CLINTON.

From judgment for defendants, the plaintiff appealed.

*Jones & Tillett,* and *A. G. Mangum,* for the plaintiff.
*Burwell, Walker & Cansler,* and *D. W. Robinson,* for the defendants.

FAIRCLOTH, C. J.   The plaintiff demands damages for breach of contract (Exhibit A, in the record).   The defendants deny the alleged breach of contract, and rely upon the illegality of the contract as their defense.   It is agreed by the parties that at the time the contract was made the plain-

tiff, Culp, was the agent and broker of the Cumberland Flour Mills, for the sale of their flour, and the defendants were agents and brokers for the Sweetwater Flour Mills (located in Tennessee), for the sale of their flour, and that the flour of the respective companies were competitive brands of flour in the territory mentioned in the contract. In the contract (Exhibit A), the plaintiff, Culp, for a valuable consideration, agrees with R. C. G. Love & Son, and Edgar Love & Co., not to sell meats, lard, and oil in certain territory, including several counties, for a certain number of months, and the said R. C. G. Love & Son and Edgar Love & Co. agree not to sell flour at wholesale in the same territory and for the same period of time. They also agree to obtain for the plaintiff, Culp, the sale of the Sweetwater Mill Company's flour at all the towns on several railroad lines for the full term of this contract. It was further agreed that the plaintiff is not to neglect the sale of Cumberland Mills flour for that of Sweetwater Mills, nor "to push sale of said Sweetwater Mills flour further than it may be to his interest to do." The plaintiff also agreed to divide with the other contracting parties his brokerage on sale of the Sweetwater Mills flour for the same term and in the same territory. The parties then agreed severally to forfeit and pay $500 if either failed to perform his part of this contract. It appears, from the evidence, that defendants notified the Sweetwater Company that they had transferred their agency to sell flour to the plaintiff, but did not inform the Sweetwater Company of the true nature of said contract, Exhibit A. The Sweetwater Company recognized the transferred agency on condition that the plaintiff handle its goods exclusively. In a few months the Sweetwater Company withdrew plaintiff's agency to sell its flour, and plaintiff sues for the penalty and damage. At the close of plaintiff's evidence, his Honor held that plaintiff could not recover. Plaintiff took a nonsuit, and appealed.

Concealing the true nature of the contract under consideration was a fraud on the Sweetwater Company, and contrary to good morals, and the combination between plaintiff and defendants to suppress and destroy competition in trade in the necessaries of life was an imposition on the people and against public policy. The agreement was therefore illegal, and no court of justice will lend its aid to either party to enforce such an executory contract

The objection of a party to an illegal contract does not sound well in his mouth. It is not for his sake that the objection is allowed, but it is founded in general principles of policy, of which he has the advantage by the accident of being sued by his confederate in wrongdoing. "An executory contract, the consideration of which is *contra bonos mores*, or against the public policy, or laws of the State, or in fraud of the State, or of any third person, can not be enforced in a court of justice." *Blythe v. Lovinggood*, 24 N. C., 20. In *Armstrong v. Toler*, 11 Wheat., 258, the Court spoke in these words: "The principle of the rule is, that no man ought to be heard in a court of justice who seeks to enforce a contract founded in, or arising out of, moral or political turpitude." In Story, Ag., sec. 348, this clear distinction is laid down: "The distinction between the cases where a recovery can be had and the cases where a recovery can not be had of money connected with illegal transactions, which seems now best supported, is this: That wherever the party seeking to recover is obliged to make out his case by showing the illegal contract, or transaction, or where it appears that he was privy to the original illegal contract, or transaction, then he is not entitled to recover any advance made by him connected with that contract. But when the advances have been made upon a new contract remotely connected with the original illegal contract, or transaction, but the title of the party

to recover is not dependent upon that contract, but his case may be proved without reference to it, then he is entitled to recover." In the case before us, it is the illegal contract itself between the parties that we are asked to enforce. The proof shows that defendants agreed not to compete with plaintiff in selling flour, leaving him to demand of the public his own price, and he agreeing not to sell meats, lards, and oil in their chosen territory, and to divide with them his brokerage on sales of the Sweetwater flour, and the Court is called on by one party to make the other party pay money for failing to perform his part of this unlawful transaction. A and B agree to rob C. A does the work; B stands off and simply looks on, and then B calls on the Court to make A divide the spoils; or, if they have stipulated that either one failing to do his part of the nefarious work, shall forfeit and pay the other $500. Has any court of justice ever responded favorably to such request by either party? We do not mean to classify these parties with robbers, or to characterize their transactions other than according to the facts which they have brought out in their case. The intention of the parties is immaterial. They may have thought it permissible to make a sharp bargain at the expense of the public and injury to a third party, but we can not agree with, or help them, to do so. *King v. Winants,* 71 N. C., 469.

Affirmed.