## SHUTE v. HEATH.

(Filed November 18, 1902.)

CONTRACTS—*Restraint of Trade —Indefiniteness as to Territory.*

A provision in a contract of sale of a business of manufacturing lumber and ginning cotton that the seller would not engage in the same business in any territory in which the seller had secured patronage, is void for indefiniteness as to territory.

ACTION by H. A. Shute and others against W. C. Heath and W. S. Lee, heard by Judge *T. A. McNeill* and a jury, at March Term, 1902, of the Superior Court of UNION County. From a judgment for the defendants, the plaintiffs appealed.

*Maxwell & Keerans,* for the plaintiffs.
*Armfield & Williams,* and *Adams & Jerome,* for the defendants.

MONTGOMERY, J.   Contracts in partial restraint of trade can be made and enforced of common right.   This Court said in *Kramer v. Old,* 119 N. C., 1; 56 Am. St. Rep., 650; 34 L. R. A., 389: "The modern doctrine is founded upon the basic principle that one who, by his skill and industry, builds up a business, acquires a property at least in the goodwill of his patrons, which is the product of his own efforts, and has the fundamental right to dispose of the fruit of his own labor, subject only to such restrictions as are imposed for the protection of society, either by expressed enactments of law or by public policy."

An indefinite restriction as to duration will not make such contracts void.   *Kramer v. Old, supra.*   But there must be a definite limitation as to space; and the reasonableness of such limitation will depend upon the nature of the business and goodwill sold.   A contract, for instance, for a valid consideration not to engage in the manufacture and sale of firearms in general use, would be allowed to cover a larger extent of territory than would a contract not to engage in the manufacture of timber or the ginning of cotton.   And the reasonableness of the limitation as to space is a matter of law for the Court to decide.   Chitty on Contracts, 738.   And the test of that reasonableness is whether the space or territory is greater than is necessary to enable the assignee to protect himself from competition on the part of his assignor, and thereby to get the benefit of what he has bought.   The assignee would have the right to freedom from the competition of the assignor in the whole territory from which the assignor derived the profits of his business.   The contract before us is silent as to restriction as to time, but under the decision made in *Kramer v. Old, supra,* that would be construed to be for the lives of the assignors.   The trouble in the present case grows out of that part of the contract in respect to the limitation as to space.   The defendants, after selling to the

plaintiffs a tract of land and ginning and saw-mill machinery, agreed with them that they "would not erect; conduct or carry on the business of ginning and baling cotton or making brick in any territory now occupied by them, or from which they secure their patronage, so as to compete with them or injure their business in any of the lines of ginning and baling cotton or making brick, either for ourselves or as agents for another or others."

The defendants in this Court filed a motion to dismiss the action on the ground that the complaint did not state a cause of action, in that the contract set out in the complain is void for indefiniteness as to territory within which defendants were not to gin cotton. We think the motion must be allowed. The infirmity of the contract does not consist in the reasonableness as to the extent of territory in which the plaintiffs were to conduct their business free from competition on the part of the defendants, but it is in the indefiniteness of that territory. No rule can be laid down by which the area can be made certain. No instructions could be given even to an expert—surveyor—by which he could define the bounds of the space. It is without shape, without course or distance from any object or pointer. The fixing of the bounds would depend upon the testimony of witnesses, each testifying as to what he knew as to who were the patrons of the plaintiffs, and where they resided. The attempted enforcement of such contracts would, in the nature of things, be likely to produce litigation between the assignor and the assignee as to the extent of the territory, with the probability that large numbers of witnesses would be called, and great expense incurred both by the litigants and the public. A retrospect of the course of the law in respect to contracts in restraint of trade confirms us in the view we have taken of the contract in the present case as to the limitation as to space therein set out—that is, that the agreement that the limitation as to space shall be so

definitely set out in the contract as that the bounds must be determined by the same rules as apply to the description of real estate in deeds. Contracts in general restraint of trade with English speaking peoples have always been void; and while the doctrine has been in modern days modified to the extent of permitting such contracts, to operate in limited territory, to be made and enforced, yet in all the cases we have found (except one hereinafter referred to) the space has been definitely fixed in the contract with as much certainty as is required in the description in deeds. The evil consequences likely to flow from such contracts to the parties as well as to the public, induce us to construe the requirement of definiteness as to space, strictly, and that the contracts themselves shall set out such a descritpion as shall be definite without the aid of testimony *de hors,* except such as is allowed in establishing the boundaries to real estate conveyances. An opinion in the case of *Alger v. Thacher,* 19 Pick., 51, is of so much interest on this subject that we feel justified in making the following quotation from it:

"Among the most ancient rules of the common law, we find it laid down that bonds in restraint of trade are void. As early as the second year of Henry V. (A. D. 1415), we find by the Year Books that this was considered to be old and settled law. Through a succession of decisions it has been handed down to us unquestioned till the present time. It is true, the general rule has from time to time been modified and qualified, but the principle has always been regarded as important and salutary. For two hundred years the rule continued unchanged and without exceptions. Then an attempt was made to qualify it by setting up a distinction between sealed instruments and simple contracts. But this could not be sustained upon any sound principle. A different distinction was then started from a general and unlimited (limited) restraint of trade, which has been adhered to down to the

present day.    This qualification of the general rule may be found as early as the eighteenth year of James I. (A. D. 1621) ; *Broad v. Jolyffe,* Cro. Jac., 596, where it was holden that a contract not to use a certain trade in a particular place was an exception to the general rule, and not void.    And in the great and leading case on this subject, *Mitchell v. Reynolds,* reported in Lucas 27, 81, 131, the distinction between contracts under seal and not under seal was finally exploded, and the distinction between limited and general restraints fully established.    Ever since that decision, contracts in restraint of trade generally have been held to be void, while those limited as to time or place or persons have been regarded as valid and duly enforced.    \*    \*    \*    It is reasonable, salutary and suited to the genius of our government and the nature of our institutions.    It is founded on just principles of public policy, and carries out our constitutional prohibitions of monopolies and exclusive privileges.    The unreasonableness of contracts in restraint of trade and business is very apparent from several obvious considerations:    1. Such contracts injure the parties making them, because they diminish their means of procuring livelihoods and a competency for their families.    They tempt improvident persons, for the sake of present gain, to deprive themselves of the power to make future acquisitions.    And they expose such persons to imposition and oppression.    2. They tend to deprive the public of the services of men in the employments and capacities in which they may be most useful to the community as well as to themselves.    3. They discourage industry and enterprise, and diminish the products of ingenuity and skill.    4. They prevent competition and enhance prices.    5. They expose the public to all the evils of monopoly.    And this especially is applicable to wealthy companies and large corporations which have the means, unless restrained by law, to exclude rivalry, monopolize business, and engross the market.    Against evils like

these, wise laws protect individuals and the public by declaring all such laws void."

The plaintiffs' counsel referred to the cases of *Kramer v. Old,* 119 N. C., 1; 56 Am. St. Rep., 650; 34 L. R. A., 389, and *American Hardware Co. v. Tower Hardware Co.,* 6 So. Rep., 43, as supporting the plaintiffs' contention that the limitation as to space was sufficiently definite to be enforced. In the first mentioned case, the defendants agreed not to continue the milling business "in or in the vicinity of Elizabeth City." There, the defendants did not make, in this Court, the contention that the area was too great, and therefore unreasonable, or that it was too indefinite. The contention was over the limitation as to time. The other case, however—the hardware case— is toward the sustaining of the plaintiffs' position. The contract there provided that the defendants, upon a sale of their business to the plaintiffs, would sell no more "plow blades and plow stocks," without stating any particular or definite territory. The Court there said: "The territory in which the vendees obtained their trade was well known to the vendors, and therefore the contract is not in in general restraint of trade and invalid. A contract by which a partnership engaged in the business of selling hardware, sold out their stock of plow blades and plow stocks to a rival, and agreed not to handle any more plow blades or plow stocks, was construed in connection with the attending circumstances showing the extent of country over which the rivalry in the business extended, is not an unreasonable restriction of trade." But this Court decided exactly the reverse in the case of *Hauser v. Harding,* 126 N. C., 295, and for the reasons given there, and here, we will abide by that decision. Motion allowed, and

Action Dismissed.