J. R. SHUTE v. T. J. SHUTE AND J. EARL SHUTE.

(Filed 20 November, 1918.)

1. Contracts — Consideration—Restraint of Trade—Division of Territory— Vendor and Purchaser—Cotton-Ginning Plants.

Under a contract dividing a county into separate territory, within which each of the respective parties was not to interfere with the business of the other in operating cotton gins, buying cotton seed, etc., the plaintiff sold the defendant a cotton-ginning plant, the latter agreeing to remove the plant and not to again operate one there, and upon the violation by the defendant of this contract the plaintiff seeks an injunction: *Held*, the intent of the agreement was a division of territory, with the object to eliminate competition therein, making inapplicable the principles upon which a partial restraint of trade, when reasonable, may be enforced in the interest of the vendee; and were it otherwise, the public interest in so large a territory in having cotton conveniently and inexpensively ginned was unreasonably interfered with; and the injunction, being against the principles of the common law and our statutes applicable, was properly dissolved. Laws 1913, ch. 41.

2. Injunction—Judgment—Estoppel.

An injunction obtained in a former action between the same parties, on the same subject-matter, will not operate as an estoppel in the present suit, the remedy being by enforcement of that judgment, and not by a new action.

APPEAL by plaintiff from *Adams, J.,* at July Term, 1918, of UNION.

This was an action to enjoin the erection of a cotton gin in Monroe upon the ground that it was in violation of a contract between the plaintiff and the defendant J. T. Shute.

In May, 1916, J. R. Shute, the plaintiff entered into a contract with J. T. Shute, his brother, who, with his son, J. E. Shute, are the defendants. The contract in question specified that J. R. Shute sold to said J. T. Shute for $4,000 the cotton gin plant in Monroe, specifying the location and its contents, *i. e.,* four 70 brush saw gins and fixtures, one 60-horsepower electric motor and fixtures, and other appurtenances, with a provision that said J. T. Shute should have "the exclusive privilege of buying and selling seed cotton and cotton seed, so far as the said J. R. Shute is concerned, on the south side of Bear Skin Creek for a period of ten years from 1 September, 1916." Said J. R. Shute bound himself "neither to build, nor cause to be built, any ginning plant in Union County on the south side of Bear Skin Creek for a period of ten years after 1 September, 1916, and not to operate, or cause to be operated, or be interested in any way with any person, firm, or corporation, in operating any ginning plant in Union County on south side of Bear Skin Creek for said period of ten years." And there was a further pro-

vision that the defendant J. T. Shute should not engage or be interested in ginning cotton or buying cotton seed or seed cotton, cotton-seed meal, or hulls, for the said period of ten years on the north side of Bear Skin Creek in said county nor on the site of the gin plant which he was then operating near the railroad depot in Monroe, which he agreed to remove, and did remove.

From the judgment dissolving a temporary restraining order and refusing to continue the injunction to the hearing, the plaintiff appealed.

*W. B. Love and Stack & Parker for plaintiff.*
*Frank Armfield and J. C. M. Vann for defendants.*

CLARK, C. J. Bear Skin Creek is practically the northern boundary of Monroe. The contract which the plaintiff J. R. Shute is asking the Court to enforce does not contain a provision for the sale of the good-will of the gin plant, and besides, this action is not brought by the vendee to protect the conveyance of the good-will as an exception to the rule against contracts in restraint of trade, but singularly enough it is brought by the vendor to enforce a division of territory by which the vendee was not to engage in the business north of Bear Skin Creek, nor at the location near railroad depot in Monroe, for ten years in consideration of the agreement that the plaintiff was not to engage in the same business of ginning or buying cotton seed and seed cotton south of Bear Skin Creek. The agreement sought to be enforced is clearly a division of the territory named, with the creek for a boundary. The sole object is to eliminate competition between the parties. This is an illegal purpose and the judge properly refused an injunction to the hearing. It is to the interest of the public that there should be the freest competition in a matter of this kind, and a contract to suppress it cannot invoke the aid of the equitable jurisdiction of the court.

One of the oldest and best-settled principles of the common law was that bonds in restraint of trade were illegal. This was held as early as 2 Henry V. (A. D. 1415), and it was then stated in the Year-books to be old and settled law. There was a modification of this rule (*Broad v. Jolyffe,* Cro. Jac., 506) that a contract not to use a certain trade in a particular place was a reasonable restriction and did not come under the general rule.

In *Kramer v. Old,* 119 N. C., 1, it was held that the sale of the vendor's milling business in Elizabeth City with stipulation against his remaining in the business was not invalid. The Court said: "The test of the reasonableness of the territorial limit covered by such contracts is involved in the question whether the area described in the contract is

greater than it is necessary to make in order to protect the purchaser from competition in his efforts to hold and get the full benefit of the business or right of competition bought by him."

In *Shute v. Heath,* 131 N. C., 281, the Court held: "A provision in a contract of sale of the business of manufacturing lumber and ginning cotton, that the seller would not engage in the same business in any territory in which the seller had secured patronage, is void for indefiniteness as to territory."

The present contract is not void upon that ground, but because it appears upon the face of it that the division of the territory is not for the purpose of conveying to the defendant the right to obtain all the patronage of the establishment which the plaintiff sold to the defendants, but for the purpose of shutting off competition by preventing the defendant from putting up any other plant or being interested in the establishment of any other plant within all that part of the county of Union north of Bear Skin Creek. This is clearly against public interest, which is that these ginning plants shall be multiplied according to the needs of the public, and shall not be restricted in number by agreement between parties in that line of business.

This Court has upheld the theory of a limited and reasonable restraint of trade in several cases, *i. e.,* as to sales of stock and livery business, *Anders v. Gardner,* 151 N. C., 604; *King v. Fountain,* 126 N. C., 197; as to the milling business, *Kramer v. Old,* 119 N. C., 6; newspaper business, *Cowan v. Fairbrother,* 118 N. C., 406; saloon business, *Jolly v. Brady,* 127 N. C., 142; medical practice, *Hauser v. Harding,* 126 N. C., 295; drug business, *Baker v. Gordon,* 86 N. C., 116.

In each of these cases the action was brought by the vendee in order to protect the good-will which had been conveyed as an essential element of the business which he had bought.

Even in such cases, the test is the reasonableness and *bona fides* of the contract in question, whether it is for the purpose of securing to the purchaser merely the benefit of the good-will of the business sold or whether it is partly at least for the purpose of suppressing competition. Consequently, such contracts must be considered as to their reasonableness in duration of time or extent of territory largely in connection with the nature of the business. A restriction as to territory which would be reasonable in regard to issuing a newspaper which draws from a large territory would not apply to the prohibition of the erection of ginning plants, in which business it is burdensome to the public to haul seed cotton any great distance to be ginned.

It appears in this case that J. R. Shute and J. T. Shute ginned at least 80 per cent of the cotton ginned in Monroe. From the nature of the business and of the commodities handled, the public had a material

interest in the subject-matter of this agreement, and the suppression of all competition with respect to 80 per cent of all the cotton ginned and opportunities for buying and selling seed cotton and cotton seed in the chief town of one of the largest cotton producing counties of the State necessarily operated against the public interest and convenience. The prohibition on the respective parties to erect any new ginning plant, or to be interested in the same, or in buying cotton seed or seed cotton in all that part of Union County lying north or south, respectively, of Bear Skin Creek was calculated and intended to prevent competition in that business. Still more so was this attempted restriction on the vendee, which could not protect the good-will of the business bought by him. Not only was the territory unnecessarily large for the protection of the buyer against competition by the vendor of the plant, but the period of ten years was also excessive for such purpose.

While there have been many decisions under the common law in regard to contracts in restraint of trade, the first statutory enactment in this State was chapters 218 and 219, Laws 1907, against agreements and combinations to "fix prices," and authorized the Attorney-General to prosecute and procure evidence. In 1909, ch. 448, these two acts of 1907 were somewhat broadened and additional authority given the Attorney-General for the enforcement of the law, but the statute applied still only to price fixing. By chapter 16, Laws 1911, the above Acts of 1907 and 1909 were repealed, and there was enacted a prohibition of agreements, combinations, or conspiracies "not to buy or sell within certain territorial limits with the intention of preventing competition." In 1913, chapter 41, this act of 1911 was substantially reënacted and its scope enlarged. Since then there has been no further amendment to the "Anti-trust Law."

The act of 1913 made every contract in restraint of trade (as there defined) illegal, and every person or corporation who directly or indirectly took part in such agreement indictable, and every contract in restraint of trade or commerce which was illegal under the principles of the common law was made a violation of this statute. The act further provided that all contracts in restraint of trade are illegal unless the parties can show affirmatively that the contracts did not injure the business of any contractor *or prevent any one from becoming a competitor.* This Court, referring to section 5, subsection b, said: "A contract made in violation of the terms of this subsection will not be enforced in the courts of this State." *Fashion Co. v. Grant,* 165 N. C., 453. The same is true, of course, of subsection f, of the same section 5, when, as in this case, the contract is unreasonable.

The plaintiff has heretofore obtained a permanent injunction against the defendant J. T. Shute erecting a gin plant on the lot near railroad

30—176

station in Monroe, where formerly stood the gin plant which he bought and agreed to move, and did remove. Whatever the scope or the legal correctness of that judgment (if it had been appealed from), it is not an estoppel on the defendant, for if it covered the same subject-matter, the remedy would be by enforcement of that judgment, and not by a new action. Besides, the present locality is not the same.

Upon its face, the real intention of this contract was to remove competition and was in violation of the common law and of the statutory provisions against unreasonable restraint of trade. The court below properly refused the aid of the equitable jurisdiction of the court for its enforcement.

Affirmed.