MAOLA ICE CREAM COMPANY OF NORTH CAROLINA, INC., v. MAOLA MILK AND ICE CREAM COMPANY.

(Filed 14 October, 1953.)

**1. Trademarks and Trade-Names § 3—**

The right of the purchaser of a business to use its trade-name or trademark may be made subject to any contractual restrictions agreed to by the parties which are not invalid as contrary to public policy.

**2. Goodwill § 1—**

Goodwill may not be disposed of separately from the property right to which it is incident, such as a particular trade-name or trademark.

**3. Goodwill § 2—**

While the sale of a business with its goodwill carries an implied obligation that the seller will do nothing to impair the advantages and benefits incident to the business sold, ordinarily it does not preclude the seller from thereafter engaging in a similar business in the vicinity provided the seller does not engage in unfair competition or interfere with the purchaser's enjoyment of the premises sold.

**4. Contracts § 7a—**

An agreement not to carry on a particular business within a certain territory must be in writing and signed by the party to be bound. G.S. 75, sec. 4.

**5. Same: Goodwill § 2—**

The owner of ice cream plants in two separate cities operated the plants with a division of territory serviced by each. Thereafter, he sold one of the plants with right in the purchaser to use the trade-name in the territory south of a specified town. *Held:* The seller or its successor may not enjoin the purchaser or its successor from thereafter engaging in the business under the trade-name in territory north of the specified town, since the agreement as to the division of territory would suppress and stifle competition and is, therefore, void.

**6. Same—**

In the sale of a business with its goodwill, the test to determine the validity of a restrictive agreement that the purchaser should not engage in the same business in competition with the seller within certain territory, is whether the restraint is such as to afford a fair protection to the interest of the seller and not so large as to interfere with the interest of the public.

**7. Same—**

An agreement by the purchaser of one of two ice cream plants that he would not engage in the business under the trade-name north of a specified town in the State, *is held* greater than required for the protection of the seller and void as detrimental to the public interest.

**8. Trademarks and Trade-Names § 3—**

Allegations by the owner of separate plants in two separate cities that he sold one of the plants with right to the purchaser to use the trade-name,

but that he thereafter had the trade-name registered in his own name in the office of the Secretary of State, does not support his conclusion that he is now the absolute owner of such trade-name.

**9. Pleadings § 15—**

Upon demurrer the complaint will be liberally construed with a view to substantial justice between the parties, giving the pleader every intendment in his favor.

**10. Pleadings § 20—**

The right to demur for failure of the complaint to state a cause of action is not waived by answering, but may be taken by demurrer *ore tenus*, or the Supreme Court may take notice thereof *ex mero motu*.

**11. Pleadings § 19c—**

The requirement that a complaint be liberally construed upon demurrer does not permit the court to construe into it that which it does not contain.

**12. Pleadings § 15—**

A demurrer admits facts properly pleaded but not inferences or conclusions of law.

JOHNSON, J., dissents.

APPEAL by the defendant from *Bone, J.,* May Civil Term 1953. BEAUFORT.

Civil action to restrain the defendant permanently from engaging in unfair competition, in which a temporary restraining order was granted.

The plaintiff's complaint may be summarized as follows:

1. Both plaintiff and defendant are North Carolina corporations—the principal office and place of business of the plaintiff is at Washington, Beaufort County, and that of the defendant in New Bern, Craven County.

2. About 31 July 1944, Maola Ice Cream Co., a partnership composed of W. E. Ellington, Jr., W. E. Duncan and Geo. W. Currin, pursuant to Chap. 80, Art. 1 G.S. registered in the Secretary of State's office a trademark and design consisting of the word "Maola" and a distinctive label, a facsimile of which is hereto attached and made a part of the complaint. About 7 March 1947, the partnership for value assigned the trademark and design to plaintiff, which assignment has been filed in the Secretary of State's office, and plaintiff is now absolute owner thereof.

3. Plaintiff now and for many years has been manufacturing, distributing and selling ice cream products in various areas of Eastern North Carolina under its aforesaid name and trademark, to the exclusive use of which plaintiff is entitled.

4. Defendant now and for some time has been engaged in a similar business in various areas of Eastern North Carolina, and has wrongfully adopted as a part of its corporate name the trademark "Maola," and is

now, and has been for some time, selling and distributing its products in containers or cartons upon which is printed or affixed a label or design bearing such close similarity to plaintiff's registered trademark as to constitute an unlawful imitation and infringement of plaintiff's rights. In addition defendant is displaying such trademark on its delivery trucks, on its stationery and its manufacturing building.

5. Plaintiff has never authorized the use by defendant of its trademark, and has made demand in writing that defendant cease using it, which the defendant has refused to do.

Wherefore, plaintiff prays the Court for a permanent injunction pursuant to G.S. 80-10 and for the recovery of a penalty of $200.00 under G.S. 80-11.

After defendant filed its answer plaintiff by leave of court at May Term 1953, filed an amendment to its complaint, the essence of which follows. In the year 1922 F. E. Mayo began the manufacture and sale of ice cream under the trade-name or trademark "Maola" in Washington. In 1927 Mayo purchased an ice cream plant in New Bern, from which he likewise sold and distributed ice cream under the trademark "Maola." That during all the time Mayo operated the two plants, there existed between the two plants a well defined division of territory served by each. The territory served by the Washington plant consisted generally of that part of Eastern North Carolina north of Vanceboro, and that served by the New Bern plant the town of Vanceboro and southwardly. In 1935 F. E. Mayo & Co., Inc., successor to F. E. Mayo, sold to H. L. Barnes and wife, defendant's predecessors, the New Bern plant. It was clearly understood and the agreement of sale so provided that the use of the trade-name "Maola" was limited to the territory theretofore served by the New Bern plant and thereafter until March 1953, with one or two rare exceptions along the border of the respective territories, the territorial division theretofore existing was strictly observed by the defendant and its predecessor on the one hand and plaintiff and its predecessors on the other. In March 1953, in direct violation of the agreement, understanding and custom theretofore had and observed, the defendant purchased a dairy in the town of Williamston, North Carolina, in the territory theretofore continually and exclusively served by plaintiff and its predecessor, and from the dairy so purchased the defendant began the distribution and sale of ice cream products under the trade-name or trademark "Maola": that the cartons in which the defendant, since March 1953, has been selling and distributing its ice cream products in plaintiff's territory are so similar in makeup and design, and in particular carrying the identical trademark "Maola" enclosed within an elliptical circle, being an exact replica of that employed by plaintiff, that it has tended to create untold confusion and uncertainty on the part of the

buying public as to the identity of the manufacturer of the product, and constitutes unfair competition and an invasion of plaintiff's rights. That unless the defendant is enjoined and restrained from advertising, selling or distributing in plaintiff's territory its products under the trademark or name "Maola" and in cartons confusingly similar to those employed by plaintiff, the plaintiff will suffer irreparable damage for which no adequate remedy exists at law.

In the lower court the defendant demurred *ore tenus* to the amendment to the complaint. The demurrer was overruled, and the defendant excepted, assigning error.

The lower court heard evidence and issued a restraining order *pendente lite* against the defendant, to which order the defendant filed several exceptions assigning error.

The defendant appeals to the Supreme Court.

*Rodman & Rodman for plaintiff, appellee.*
*R. E. Whitehurst for defendant, appellant.*

PARKER, J.  The plaintiff bases its action upon unfair competition. These facts are clearly stated in the complaint and amended complaint. 1. In 1935 F. E. Mayo & Co., Inc., owned an ice cream plant in Washington and another ice cream plant in New Bern: from both plants the company manufactured, distributed and sold ice cream under the tradename or trademark "Maola." 2. During the time the company owned both plants there existed between the two plants a well defined division of territory. The territory served by the Washington plant consisting generally of that part of Eastern North Carolina north of Vanceboro, and that served by the New Bern plant the town of Vanceboro and southwardly. 3. In 1935 the company sold to H. L. Barnes and wife, the defendant's predecessors in title, the New Bern plant, and it was clearly understood, and the agreement of sale so provided, that the use of the trade-name "Maola" was limited to the territory theretofore served by the New Bern plant. 4. From then until March 1953, with one or two rare exceptions along the border of the respective territories, the territorial division theretofore existing was observed by the defendant and its predecessor and the plaintiff and its predecessors. 5. In March 1953, the defendant purchased a dairy in Williamston, North Carolina, in territory theretofore continually and exclusively served by the plaintiff and its predecessors, and from said dairy began the distribution and sale of ice cream products in cartons carrying an identical trademark "Maola," as those used by plaintiff. 6. That this has created untold confusion and uncertainty on the part of the buying public as to the identity of the manufacturer, is unfair competition, and unless the defendant is re-

strained from such acts in plaintiff's territory, plaintiff will suffer irreparable injury. 7. A predecessor in title of plaintiff in 1944 registered in the Secretary of State's office the trademark "Maola," and in 1947 the trademark was assigned to plaintiff, who is now the owner.

It is well established law that F. E. Mayo & Co., Inc., had the legal right to sell and assign its New Bern plant with the business of that plant and the right to use the trade-name or trademark "Maola" on ice cream there manufactured, distributed and sold, and Barnes and wife succeeded to all the rights of the transferor with respect to the use and enjoyment thereof, except as such use and enjoyment may have been restricted by a valid contract. *Cowan v. Fairbrother,* 118 N.C. 406, 24 S.E. 212; *Sea Food Co. v. Way,* 169 N.C. 679, 86 S.E. 603; *Lilly & Co. v. Saunders,* 216 N.C. 163, 4 S.E. 2d 528, 125 A.L.R. 1308; 52 Am. Jur. pp. 526 and 530; 38 C.J.S. p. 954; 63 C.J. p. 518. The rights of the parties 'with respect to the use of trade-names or trademarks involved in a transaction may be governed or restricted by contract between them. *Sea Food Co. v. Way, supra;* 52 AM. Jur. p. 530; 63 C.J. p. 518.

Goodwill exists as property merely as an incident to other property rights, and is not susceptible of being owned and disposed of separately from the property right to which it is incident. Goodwill may adhere to the reputation acquired by an established business, the right to use 'a particular name or trademark. 38 C.J.S. pp. 951 and 952, where the cases are cited.

A sale of a business and its goodwill carries with it the implied obligation that the seller will in good faith do nothing to impair the advantages and benefits which the purchaser has acquired by the purchase. While there is some authority apparently to the contrary, the weight of authority seems to be that, in the absence of agreement as to the right to compete, the vendor of a premises and its goodwill is not precluded from engaging in a similar business in the vicinity, provided he does not interfere with the purchaser's enjoyment of the premises sold, and provided that he does not engage in unfair competition. *Sea Food Co. v. Way, supra;* 38 C.J.S. p. 957.

The plaintiff alleges in its pleadings that F. E. Mayo & Co., Inc., owned the Washington and New Bern Plants, and used the trade-name or trademark "Maola," on products sold from both plants; that in 1935 Mayo & Co. sold the New Bern plant with the right to use the trademark "Maola" to a predecessor in title of the defendant. If that were the entire contract, it would seem that the defendant had a legal right to buy a dairy in Williamston and distribute and sell its products there under the trademark "Maola" in rivalry with the plaintiff without being guilty of unfair competition, as there is no allegation in the plaintiff's pleadings that the defendant has changed its cartons and the way "Maola" is placed on the

cartons from the manner it has customarily used them with intent to confuse the buying public.

However, the plaintiff alleges in its pleadings that there existed between the Washington and New Bern plants a well defined division of territory served by each: the territory served by the Washington plant consisting generally of that part of Eastern North Carolina north of Vanceboro, and that served by the New Bern plant the town of Vanceboro and southwardly, and that in the sale of the New Bern plant in 1935 to defendant's predecessor in title it was clearly understood and the agreement of sale so provided that the use of the trade-name "Maola" was limited to the territory theretofore served by the New Bern plant. There is no allegation in plaintiff's pleadings that the agreement of sale was in writing, and signed by H. L. Barnes and wife.

The plaintiff contends that when the defendant in March 1953 purchased a dairy in Williamston and began the distribution and sale of its products under the trade-name "Maola," it was guilty of unfair competition and that in its complaint and amended complaint it has alleged a good cause of action for unfair competition. That raises for our determination the question as to whether the restriction or more correctly the division of territory in the agreement declared upon in plaintiff's pleadings is valid and enforceable. It seems to be illegal on three grounds.

*First.* If the alleged agreement was a limitation upon Barnes and his wife, and their successors in title, to do business anywhere in the State of North Carolina, the agreement was not in writing signed by Barnes and his wife. P.L. N.C. 1913, Ch. 41, sec. 4, now G.S. Ch. 75, sec. 4, requires such an agreement to be in writing and signed by the party who agreed not to enter into any such business within such territory to be enforceable.

*Second.* It clearly appears from the alleged agreement that the division of territory was not merely for the purpose of conveying to Barnes and his wife, and their successors, the New Bern plant with the right to use the name "Maola" and to obtain all the patronage of that plant, but also for the purpose of shutting off competition by preventing Barnes and his wife and their successors from engaging in the ice cream business under the trade-name "Maola" within all that part of Eastern North Carolina north of Vanceboro. There is no allegation that the plaintiff is serving ice cream products in all Eastern North Carolina or was in 1935. Such a division of territory was not necessary to afford fair protection to Mayo & Co., and interfered with the interests of the public as it prevented, if enforceable, Barnes and his wife, and their successors, from selling its products under the name "Maola" anywhere in North Carolina north of Vanceboro. Such an agreement would suppress and stifle competition, and is void. *Culp v. Love,* 127 N.C. 457, 37 S.E. 476;

*Shute v. Shute,* 176 N.C. 462, 97 S.E. 392; 3 A.L.R. Anno. 250; *Hill v. Davenport,* 195 N.C. 271, 141 S.E. 752.

In *Shute v. Shute, supra,* this Court held that an agreement on the part of the vendee of a cotton gin plant that he would not engage or be interested in ginning cotton, or buying cottonseed or seed cotton, for a period of ten years, on the north side of a certain creek in the county, and would remove a gin plant which he was then operating within such territory, the vendor binding himself not to build or cause to be built any ginning plant in such county on the south side of such creek for a period of ten years, was void, because it appeared upon the face of the agreement that this division of the territory was not for the purpose of conveying to the vendee the right to obtain all the patronage of the establishment which the vendor sold to him, but for the purpose of shutting off competition, by preventing the vendee from putting up any other plant or being interested in the establishment of any other plant within all that part of the county north of the creek.

*Third.* If the agreement declared upon is considered as a restrictive agreement, and not an agreement for division of territory, is it reasonable in its terms and purposes? The answer is No. In the earlier cases there was a tendency to establish as the standard for determining the reasonableness of the contract, the duration of the contract as to time and the extent of the territory in which it was to operate. We have held in earlier cases that the limitation as to space must be set out with the same definiteness as would be required in a deed of conveyance. *Hauser v. Harding,* 126 N.C. 295, 35 S.E. 586; *Shute v. Heath,* 131 N.C. 281, 42 S.E. 704.

Under changed conditions and in the effort to make goodwill a valuable asset these tests have been abandoned, and the true test now is whether the restraint is such as to afford a fair protection to the interests of the party in whose favor it is given, and not so large as to interfere with the interests of the public. *Sea Food Co. v. Way, supra; Hill v. Davenport, supra; Comfort Spring Corp. v. Burroughs,* 217 N.C. 658, 9 S.E. 2d 473; *Sonotone Corp. v. Baldwin,* 227 N.C. 387, 42 S.E. 2d 352. Contracts in partial restraint of trade are still contrary to public policy and void if nothing shows them to be reasonable. *Kadis v. Britt,* 224 N.C. 154, 29 S.E. 2d 543, 152 A.L.R. 405. Tested by this standard the agreement that the defendant and its predecessor in title should not engage in the ice cream business under the name "Maola" in Eastern North Carolina north of Vanceboro—and there is no allegation in plaintiff's pleadings that it is now or was in 1935 selling ice cream over all such territory—is greater than is required for the protection of the plaintiff, is detrimental to the public interest, and is unreasonable and void.

*Cab Co. v. Creasman,* 185 N.C. 551, 117 S.E. 787; *Extract Co. v. Ray,* 221 N.C. 269, 20 S.E. 2d 59; *Hanover Star Milling Co. v. Metcalf,* 240

U.S. 403, 60 L. Ed. 713; *United Drug Co. v. Rectanus,* 248 U.S. 90, 63 L. Ed. 141, cases relied upon by the plaintiff, have different factual situations. In none of those cases had one party bought from the other a business with the right to use a trade-name.

As to the alleged registration of the trademark "Maola" in the Secretary of State's office by the plaintiff in 1944, the plaintiff has alleged in his complaint that its predecessor in title sold the New Bern plant with the right to use the trademark "Maola" to Barnes and wife in 1935.

Construing the complaint and amended complaint liberally with a view to substantial justice between the parties, and making every intendment in favor of the pleader (G.S. 1-151; *McKinney v. High Point,* 237 N.C. 66, 74 S.E. 2d 440), we are of opinion that the complaint and amended complaint fail to state a cause of action. "We have repeatedly held that where a complaint states no cause of action such a defect is not waived by answering. The defendant may demure *ore tenus,* and, furthermore, this Court may take notice *ex mero motu* of the insufficiency of the complaint in this respect. If the cause of action, as stated by the plaintiff, is inherently bad, why permit him to proceed further in the case, for if he proves everything that he alleges he must eventually fail in the action." *Garrison v. Williams,* 150 N.C. 674, 64 S.E. 783; *Watson v. Lee County,* 224 N.C. 508, 31 S.E. 2d 535; *Aiken v. Sanderford,* 236 N.C. 760, 73 S.E. 2d 911, where the cases are cited. The statute which requires liberal construction in favor of the pleader neither requires nor permits the court to construe into a pleading that which it does not contain. *Dillingham v. Kligerman,* 235 N.C. 298, 69 S.E. 2d 500.

The demurrer admits the facts pleaded in the complaint and amended complaint, but it does not admit the legal inferences or conclusions of law set out therein that the registration of the trademark "Maola" in the Secretary of State's office and its assignment to the plaintiff made it the true and absolute owner and holder thereof; that the facts alleged constitute unfair competition, etc. We have held repeatedly that a demurrer does not admit any legal inferences or conclusions of law asserted by the pleader. *McKinney v. High Point, supra; Bumgardner v. Fence Co.,* 236 N.C. 698, 74 S.E. 2d 32; *McLaney v. Motor Freight, Inc., ibid.* 714; *Anderson v. Atkinson,* 234 N.C. 271, 66 S.E. 2d 886.

There was error in overruling the defendant's demurrer *ore tenus.* The order issuing a restraining order *pendente lite* will be vacated.

The judgment below is

Reversed.

JOHNSON, J., dissents.