MAXWELL H. THOMPSON AND JAMES G. LIPE, T/D/A THOMPSON-LIPE COMPANY, v. D. WALTER TURNER.

(Filed 1 February, 1957.)

**1. Sales § 11—Consummation of written agreement to sell personalty need not be established by any writing.**

Allegations and evidence tending to establish a written contract to sell a business, supported by the payment of a part of the purchase price as a binder, which writing stipulated that price of the fixtures and equipment had been agreed upon but that price of the merchandise should be agreed upon, and the business turned over to the purchasers when the financial arrangements had been completed, together with allegations and evidence that thereafter a substantial sum was paid to the seller by the purchasers and the business turned over to the purchasers, *is held* sufficient to be submitted to the jury on the question of a consummated sale of the business, it not being necessary that the consummation of the sale be evidenced by any writing.

**2. Contracts § 7a—**

A covenant by the seller of a business not to engage in competition with the purchaser thereof is valid if the covenant is reasonable in protecting the purchaser from competition from his vendor without detriment to the public.

**3. Same: Evidence § 39—**

A covenant by the seller of a business not to engage in competition with the purchaser in the territory "now covered" is not void for indefiniteness of description when the territory may be specifically located by parol evidence. Such parol evidence does not contradict the terms of the writing, but merely makes them definite and certain.

JOHNSON, J., not sitting.

APPEAL by defendant from *Sink, E. J.*, April 1956 Term of CALDWELL. This action was instituted in October 1955 to recover damages for breach of contract and for false and defamatory statements concerning plaintiffs' business and to enjoin further breaches and further utterances of defamatory and slanderous statements.

On 2 July 1947 defendant, designated as first party, and plaintiffs, designated as second parties, entered into a written contract, the material parts of which follow:

"The party of the first part agrees to sell to the parties of the second part his business known as the Walter Turner Company, situated in the Martinat Building at 324 West Avenue, Lenoir, North Carolina, which includes stock, fixtures, rolling stock and all good will and established business to the parties of the second part for the values agreed upon, and in consideration of this agreement the party of the first part acknowledges receipt of Two Thousand Dollars ($2,000.00) to apply on the total price, and as a binder on the deal.

"List of fixtures and equipment has been priced and agreed upon. Merchandise is to be listed at cost subject to price adjustments on certain slow moving items satisfactory to all parties concerned.

"The party of the first part agrees to turn the business over to the parties of the second part when financial arrangements, as agreed upon, has been met, and which must be completed within forty days from the above date.

"The party of the first part further agrees that he will not re-enter the wholesale coffee, tea and specialty business in Lenoir nor the territory now covered by him nor will he aid or assist any other person in doing so. However, he reserves the right to manufacture and sell to Wholesalers throughout any part of the country a brand of coffee known as MILLION DOLLAR. But it is further agreed in such a case that the parties of the second part are to have exclusive rights to sell this brand in their own territory or to manufacture same if they so desire, but for sale only in said territory."

The complaint averred that defendant sold, transferred, and conveyed the business pursuant to said contract; that plaintiffs had paid the price as agreed upon and had fully performed all of the conditions required by the contract; that defendant uttered "false and defamatory statements concerning the plaintiffs to the effect that the plaintiffs are manufacturing and selling the MILLION DOLLAR brand of coffee without any legal right to do so and that the coffee they are selling under such brand name is terrible . . ." Plaintiffs further alleged that defendant sought to prevent them from getting bags to sack the coffee and, in violation of his contract, had been selling coffee, tea, and other specialties to plaintiffs' customers in the territory sold to them by defendant.

Defendant answered and admitted that he executed the agreement of 2 July 1947. He denied the instrument was subject to the interpretation placed on it by plaintiffs. In response to the allegation that plaintiffs had paid the full amount agreed upon, the answer "admitted the plaintiffs have paid the amount of money as named . . ." The answer also admitted defendant had written two letters to a manufac-

turer of bags. Except for these admissions and an admission as to the residence of plaintiffs and defendants, the answer denies all other allegations of the complaint.

The court submitted issues which were answered by the jury as follows:

"1. Did the defendant sell and convey his wholesale coffee, tea and specialties business to the plaintiffs and agree not to re-enter said business within the counties of Alexander, Ashe, Avery, Burke, Caldwell, McDowell, Mitchell, Watauga, Wilkes and Yancey, as alleged in the Complaint?

"Answer: Yes.

"2. If so, did the defendant breach his contract with the plaintiffs, as alleged in the Complaint?

"Answer: Yes.

"3. If so, what amount, if any, are the plaintiffs entitled to recover of the defendant for such breach of contract?

"Answer: $3,000.00."

Judgment was rendered on the verdict and defendant appeals.

*Williams & Whisnant for plaintiff appellees.*
*L. H. Wall and Hal B. Adams for defendant appellant.*

RODMAN, J. Defendant's brief, after listing forty-one assignments of error composed of forty-two exceptions, says: "All of the assignments of error heretofore listed and brought forward are insisted upon, but we especially invite the Court's attention to the following:" Eight assignments of error are then listed as meriting special attention.

We do not deem it necessary to deal separately with the designated assignments of error consisting of motions to nonsuit and exceptions to the charge. We understand them to present two legal questions.

The first question is: Have plaintiffs alleged and proved a consummated sale under the paper writing of 2 July 1947? Defendant in his brief insists that plaintiffs have only pleaded and proven an option to purchase and not a consummated sale. This position of defendant results from a misconstruction of the pleadings, the effect of the testimony, and the theory on which the case was tried. The complaint, in section 2, recites the execution of the written contract and the substance of its provisions and that defendant transferred and conveyed his business pursuant thereto. Section 3 reads: "That the plaintiffs have paid full consideration agreed upon and have duly performed each and all of the conditions of the written contract on their part to be performed." The corresponding section of the answer is: "It is admitted the plaintiffs have paid the amount of money as named; all other allegations of paragraph 3 are denied." Fairly interpreted, the complaint did not

merely allege that plaintiffs had paid the $2,000 as a binder on the deal as recited in the paper writing of 2 July 1947, but that plaintiffs had paid the total purchase price ascertained after the inventory referred to in that paper had been taken; and plaintiffs had acquired the business pursuant to the terms of the written contract. The case was tried on that theory. All the evidence shows that on 1 August 1947 plaintiffs paid a substantial sum to defendant at which time the business was turned over to plaintiffs by defendant. The testimony of the witness Wise, who worked for defendant until 1 August, is to that effect. Plaintiff Lipe was asked what amount he paid under the contract for the business of D. Walter Turner. He replied: "Well, $2,000 was paid as a binder, and then the balance was paid. Q. How much was paid? A. Approximately $25,000.00." Speaking with reference to the payment of the consideration, he said: "It was paid in cash, and we took over the business August 1, 1947." Defendant himself nowhere controverts the fact that the sale was consummated as provided by the paper of 2 July 1947. He says: "Yes, I wrote the contract, the paper writing, and I signed it. I don't recall how much they paid me for the business; I don't recall what the amount was. Yes, they paid me a substantial amount. No, I don't know it was as much as $20,000; I don't know that. I have already told you I didn't know. Yes, they paid as much as $5,000; they paid as much as $10,000 . . ." He further testified: ". . . when I sold out, I did not go to Mr. Wise and Mr. Ross and ask them to stay on and work the counties that they had been working." Again he testified: "Prior to the time I sold it, I could have sold it to two people . . ." To show the sale had been consummated it was not necessary to show the minute details necessary to determine the exact price paid under the terms of the contract. If, as the testimony establishes, the sale was consummated, it was immaterial whether the amount paid and received was approximately $25,000, as testified by plaintiffs, or merely more than $10,000, as testified by defendants.

It was not necessary when the sale was consummated pursuant to the contract of 2 July 1947 to have any paper writing to evidence that fact. The property passed by delivery when the terms of the contract as written by defendant himself had been complied with. There is testimony in the record coming from the defendant to the effect that he delivered the merchandise to plaintiffs.

This brings us to the second question, namely: Is the territory in which defendant contracted not to engage in business void for failure of description?

Defendant does not assert that the contract is void as being in restraint of trade and hence contrary to public policy. Contracts for the sale of a business containing as an incident to the sale a covenant

not to engage in business in competition with the vendee in the area served by the business are recognized as valid when reasonable. The test of a covenant is its reasonableness in protecting the purchaser from competition from his vendor without detriment to the public. *Ice Cream Co. v. Ice Cream Co.,* 238 N.C. 317, 77 S.E. 2d 910; *Sonotone Corporation v. Baldwin,* 227 N.C. 387, 42 S.E. 2d 352; *Moskin Bros. v. Swartzberg,* 199 N.C. 539, 155 S.E. 154; *Faust v. Rohr,* 166 N.C. 187, 81 S.E. 1096; *Wooten v. Harris,* 153 N.C. 43, 68 S.E. 898; *Shute v. Heath,* 131 N.C. 281; *King v. Fountain,* 126 N.C. 196; *Kramer v. Old,* 119 N.C. 1; 36 Am. Jur. 537.

Defendant's position is that the contract does not describe the area in which defendant is prohibited from competing with sufficient accuracy to identify and locate it. The defendant cites, in support of his position, *Hauser v. Harding,* 126 N.C. 295. There the area was described as "the territory surrounding Yadkinville." The Court said: "The territory surrounding Yadkinville—the language of the contract—is so uncertain as to be incapable of being marked out or being identified. Such language does not in law define a prescribed territory. We know of no rule by which the territory could be laid off."

In *Shute v. Heath, supra,* the territory was described as "any territory now occupied by them or from which they secure their patronage." The Court held the description was not susceptible of location. Manifestly that is so because where the purchaser might secure patronage in the future is not something that could be determined when the contract was entered into. That case expressly recognizes the doctrine that if a description suffices to meet the test necessary for a valid conveyance of real estate, it is sufficiently accurate to meet the test of area which limits the vendor's right to compete with the purchaser.

The evidence for the plaintiffs identifies the territory in which defendant operated at the time of the sale as composed of the ten counties named in the issue. Plaintiffs testified that these were the counties which comprised the territory served by defendant in July 1947. In addition to the testimony of plaintiffs, former employees of defendant testified as to the territory in which defendant operated at the time of the sale. Defendant, a witness in his own behalf, did not specifically deny that the counties enumerated in the issue were the counties covered by him in July 1947. He testified: "I was not to sell any merchandise of any kind within the territory where I sold to the plaintiffs, within their territory. I don't know just what the territory was, all of the counties it included, but I know most of the counties, in the territory . . ." It did not, as defendant suggests, contradict the terms of the written contract to show by parol what counties the defendant was operating in at the time of the sale in 1947. This was a fact susceptible

of accurate determination and when shown by parol fixed the bounds of the area in which defendant had contracted not to compete with plaintiffs. This sufficed to meet the test. *Skipper v. Yow,* 238 N.C. 659, 78 S.E. 2d 600; *Linder v. Horne,* 237 N.C. 129, 74 S.E. 2d 227; *Stewart v. Cary,* 220 N.C. 214, 17 S.E. 2d 29; *Self Help Corporation v. Brinkley,* 215 N.C. 615, 2 S.E. 2d 889; *Lee v. Barefoot,* 196 N.C. 107, 144 S.E. 547; *Norwood v. Totten,* 166 N.C. 648, 82 S.E. 951.

The crucial question in this case was not what was the area in which competition was prohibited, but had defendant under the guise of a manufacturer of coffee in fact sought, as a wholesale merchant, to wean from plaintiffs, retail merchants, former customers of defendant. The jury has found that fact in accordance with the contentions of plaintiffs.

We have given consideration to all the other exceptions and assignments of error but discover nothing which would justify a new trial. There is

No error.

JOHNSON, J., not sitting.