Texaco, Inc., a Delaware Corporation, Plaintiff-Appellee, v. Kane County Oil, Inc., an Illinois Corporation, Defendant-Appellant.

Gen. No. 67–170.

Second District.

June 27, 1968.

Smith and McCracken, of Geneva, and Anthony F. Spina, of Elmwood Park, for appellant.

Redman, Shearer & O'Brien, of St. Charles, Winston, Strawn, Smith & Patterson, Thomas A. Reynolds, Edward L. Foote, and Brian A. Loftus, of Chicago, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

The plaintiff, Texaco, Inc., brought this suit against the defendant, Kane County Oil, Inc., to enjoin it from, among other things, using the name "McCornack Oil Co." or "McCornack Oil Company." The trial court granted summary judgment for the plaintiff.

The questions raised on appeal may be distilled into three basic issues:

(1) Was there a valid assignment to the plaintiff of the trade name, "McCornack Oil Co." or "McCornack Oil Company"?;

(2) If so, did the plaintiff subsequently abandon this trade name?;

(3) Were there material issues of fact which precluded the right to a summary judgment?

The McCornack family, under the corporate name of McCornack Oil Company, had been a distributor for Texaco in St. Charles since 1934. It was also a Firestone Tire distributor under this corporate name. In the testimony, St. Charles was called a "Texaco town" in that Texaco enjoyed good sales in the area. It is also apparent that the names "McCornack" and "Texaco" were associated by the people in the community because of the long duration of the distributorship, the method of operation, and the joint use of the names in advertising and on equipment.

In the fall of 1962, Elmore McCornack, the president of McCornack Oil Company, decided to sell the oil business, and approached Texaco. An agreement was reached and signed on December 22, 1962, and McCornack Oil Company transferred the business to Texaco on December 28, 1962, for a total consideration of $500,000. Texaco wanted the use of the McCornack name for obvious reasons, and it was agreed that Texaco would be assigned all trade names used by McCornack in the business. The consideration for the goodwill and trade names was $54,629.

On December 28, 1962, pursuant to its agreement, McCornack Oil Company assigned to Texaco "the right, but only in connection with the sale and distribution of petroleum and related products, to use and to do busi-

ness under the names, 'McCornack Oil Company' and 'McCornack Oil,' excepting and reserving, however, to the Assignor the right to use said names in connection with its Firestone dealer store operation."

The new distributorship was set up at the same time with Herb Borman, who had been an officer of McCornack Oil Company. Warren Munson, Texaco's representative in that area, participated in negotiating this agreement, which described the new distributorship as "Herb Borman, d/b/a McCornack Oil Co., Not Inc."

Borman testified that he had been at negotiations regarding the sale of the McCornack business to Texaco, and was aware of the transfer of the McCornack name to Texaco; that Mr. Krueger, a representative of Texaco, was one of the persons who suggested that the new distributorship operate under the McCornack name; and that Krueger's conversation was that he could use the McCornack name as long as he sold Texaco products.

During these negotiations, Munson had arranged to join Borman in the distributorship, which fact was known to Elmore McCornack, but unknown to Texaco. Munson did join Borman in January of 1963, and assumed a leading role in the business at that time. Subsequently, in September of 1964, he incorporated the distributorship under the name "Kane County Oil, Inc."—the defendant. The business continued to operate under the McCornack name until August of 1965, when the distributorship was cancelled. At that time, Texaco appointed a new distributor, conferring upon it the right to use the McCornack name. The defendant claimed that it had the right to use the name in its gasoline and oil operation, and this suit followed.

■■■ The defendant claims that the assignment to Texaco by McCornack of the right to use the name "McCornack Oil Company" in connection with the distribution of Texaco products in this area was void as an assignment in gross, in that McCornack did not trans-

fer all of its business to Texaco. It is patent that this contention is without merit. While it is true that a trade name may not be transferred apart from the business to which it is related (Goodman v. Motor Products Corp., 9 Ill App2d 57, 79–82 incl., 132 NE2d 356 (1956)), it is equally well recognized that business entities may in fact operate distinct and separable businesses and transfer such a distinct and separable portion of the entity, together with the goodwill, trade names and trademarks connected therewith. Maola Ice Cream Co. of North Carolina, Inc. v. Maola Milk & Ice Cream Co., 238 NC 317, 77 SE2d 910, 914 (1953); Andrew Jergens Co. v. Woodbury, Inc., 273 F 952, 959 (DC Del 1921), affd 279 F 1016 (3rd Cir 1922); Ph. Schneider Brewing Co. v. Century Distilling Co., 107 F2d 699, 703, 704 (10th Cir 1939); 87 CJS, Trade Marks, etc., § 171, pp 501, 502. Such an assignment is not an assignment in gross.

McCornack Oil Company had operated two separable businesses—the Texaco petroleum distributorship and the Firestone tire dealership. All of the assets of the petroleum business were transferred to Texaco, and the transfer of the trade names, "McCornack Oil Company" and "McCornack Oil" to be used in conjunction with this business, were valid assignments.

The uncontroverted facts warrant a finding that there was no abandonment by Texaco of the trade name, McCornack Oil. The parties agree that the legal requirements necessary for an abandonment are that there must be an intent to abandon, coupled with an act or omission carrying this intent into effect.

In December of 1962, Texaco paid nearly $55,000 for the name "McCornack." At the same time, when it set up the distributorship to follow, it suggested the use of the name "McCornack" by that distributor, and, in fact, contracted with the successive distributors in such manner as to indicate that they were to do business as McCornack Oil. It is not realistic to believe that Texaco

by such action intended to give up its right to the name for which it had just paid nearly $55,000. Such suggestion seems absurd.

Munson stated that Krueger, a representative of Texaco, suggested that he should use the name McCornack in his distributorship operations, but did not require that he use the name. We do not see how the lack of requirement has any relevancy. The McCornack name and its association with Texaco was a valuable asset because of the business history and reputation since 1934. Elmore McCornack also suggested to both Borman and Munson the continued use of the name because of its obvious value. Borman, who no longer has any personal interest in this matter, stated that he was aware from his conversations with Texaco that he was given the right to use the McCornack name as long as he continued to sell Texaco products.

All of the parties to this transaction were aware that customers in this area identified the name "McCornack" with Texaco products. The name was valuable to Texaco when used by its distributor in this area. Thus, when Texaco recommended to its distributors that they use the name "McCornack" when it approved advertisements in which the two names "McCornack" and "Texaco" were associated and when it approved of the joint use of the names on equipment, it was using this acquired asset in the only way in which it had value to Texaco—through the distribution of Texaco petroleum products in the St. Charles area under the name McCornack.

■ The defendant concedes that there has been no grant or assignment to it by Texaco of the trade name in question. The most that can be said is that the defendant was permitted by Texaco to use the name. This did not divest Texaco of the continued right to the name upon the termination of the distributorship. Smith v. Dental Products Co., 140 F2d 140, 146, 147 (7th Cir 1944) ; 87 CJS, Trade Marks, etc., § 182, pp 520,

521. To permit the defendant the continued use of the McCornack name after its distributorship has been terminated and after it no longer sells Texaco products, would constitute a fraud upon the public. Goodman v. Motor Products Corp., supra, 80.

While the defendant suggests that it was misled by Texaco, and that Texaco had abandoned whatever right it may have had to the McCornack name, the defendant's actions suggest just the opposite. Elmore McCornack dissolved his corporation sometime after the sale to Texaco so that the corporate name was available for incorporating purposes to anyone. On March 29, 1965, Munson wrote Texaco referring to conversations as far back as the fall of 1964 when he had asked if he could use the name "McCornack Oil Company, Incorporated," and in said letter he stated, "We are most anxious to receive Texaco's written permission for the use of this name."

Again, on April 26, 1965, another officer of Kane County Oil Co. wrote Texaco asking for the use of the name "McCornack Oil Company, Incorporated." In said letter he referred to earlier conversations and letters with Texaco concerning this matter, and stated:

> "For your information, we are using this name, but have never received written permission from Texaco. We understand Texaco acquired rights to the name when they purchased the assets of McCornack Oil, Inc.
>
> "Our attorney and CPA have strongly advised us to either obtain written permission from Texaco or drop the use of the name."

■ The facts in this case do not permit the conclusion that Texaco abandoned the trade name acquired by it. Not only does it appear that Texaco intended the continued use of this asset which was acquired in December of 1962, but it also appears that all parties were aware of Texaco's intention to continue such use.

■ We are of the opinion that the trial court properly granted a summary judgment. As was said in Allen v. Meyer, 14 Ill2d 284, 292, 152 NE2d 576 (1958):

> "Summary judgment procedure is an important tool in the administration of justice. Its use in a proper case, wherein is presented no genuine issue as to any material fact, is to be encouraged. The benefits of summary judgment in a proper case inure not only to the litigants, in the saving of time and expenses, but to the community in avoiding congestion of trial calendars and the expenses of unnecessary trials."

■ We agree that the purpose of a summary judgment is not to try issues of fact, but only to determine whether material issues of fact exist. An examination of the entire record in this case does not show any material issues of fact, but rather, arguments and legal questions as to the effect of the material facts. We believe that the trial court was correct in holding that no genuine issue of fact remained, and that the cause of action was determinable as a question of law.

There are other matters raised in the briefs which need not be discussed, either because they were waived during the oral argument or because of the views expressed herein.

Judgment affirmed.

MORAN and SEIDENFELD, JJ., concur.