OPINION OF THE COURT
William Rigler, J.
This case is a good example of how even when a matrimonial action may not involve an unusually large amount of assets, the issues of equitable distribution may be complex. The courts are being asked to undertake the task of unraveling a couple’s development of equity over the course of a marriage and then put the pieces back together in separate but equitable fashion. It is often not an easy undertaking. Upon review of the facts, plaintiff was granted a judgment of divorce on the grounds of the constructive abandonment of her by defendant. Plaintiff’s action for a divorce based on cruelty and adultery was dismissed.
FACTUAL ASPECTS OF THE ACTION
The parties met in 1969 while they both were taking night classes at Erasmus Hall High School. They were both in their 20’s. At the time plaintiff was already a registered nurse *297 having received her degree in 1962. The parties were married in 1971.
Plaintiff continued to work full time after the parties’ first child was born in October 1971. Defendant was in college at the time. After college, defendant went to medical school at New York University. He graduated in June 1977. During this entire period defendant’s earnings were meager at best. There is no dispute that much of his education was financed through financial aid, including still outstanding loans. However, what is also clear is that plaintiff was shouldering the substantial burden of supporting the family during this period. This permitted defendant to attend school, obtain his degrees and his medical license. Additionally, the task of raising the young children fell to plaintiff so as to enable defendant to study.
In 1982, while employed by Kings County Hospital earning $40,000, defendant entered into a part-time practice. While building his practice, defendant continued to work within the New York City Health and Hospitals Corporation (HHC) system. In 1983 his salary was $43,000. In 1984 he earned approximately $76,500. In 1985 his earnings were approximately $64,500. Defendant also worked for the New York City Fire Department in 1984-1985 earning approximately $1,000 in additional moneys. For the years 1986 and 1987, his earnings from salaried employment were $50,000 and $57,000, respectively.
Defendant’s income from his part-time medical practice as a cardiologist is not as obvious. What is clear from a review of the practice’s figures is that at least some of the expenditures were personal in nature rather than related to the practice. As an example while he always shows a tax loss from the practice his deductions include very high automobile depreciation interest.
EQUITABLE DISTRIBUTION
The remaining issues are equitable distribution of the marital assets, child support, maintenance and counsel fees. The court will address the question of equitable distribution first. It is a three-part process; initially the court will categorize the parties’ assets as either marital property or separate property (Domestic Relations Law § 23 [B] [1] [c], [d]). This is followed by the next step of evaluation. Once the process is completed, the question of the actual distribution of the assets can be accomplished.
*298 a. CATEGORIZATION AND EVALUATION
The first marital asset is the family residence, located at 931 Ocean Avenue, Brooklyn, New York. Plaintiff currently resides there with the parties’ children. The parties stipulated that as of May 9, 1988, the time of trial, it had a net equity of $307,000.
There was little if any evidence produced during trial relating to the value of the household furnishings or the parties’ two automobiles. Any equitable distribution of those items will therefore be difficult.
The second marital asset is a two-family house located at 294 East 45th Street, Brooklyn, New York. There is a concession between the parties that at the time of trial it had a net equity of $142,000.
The next asset is real property in Florida. The property is owned with two other couples. Thus, the parties herein have a one-third interest in the property. It was purchased during the marriage in 1981 and thus is marital property (Domestic Relations Law § 236 [B] [1] [c]). It has a total value of approximately $35,000 to $40,000 as shown by plaintiff’s notice to admit with a net equity of between $25,000 and $30,000 (or $8,333 to $10,000 for the parties). Due to the complications of ownership of the property, the court finds the parties’ interests in the property to be valued at $8,333.
The next set of assets concern defendant’s medical license and medical practice. In evaluating the defendant’s medical license and/or the medical practice the court will have to face the troublesome issue of the merger of a medical license into a medical practice. However, before the court addresses the question head-on, an evalution of the defendant’s part-time practice can be made since there is no doubt that this is a marital asset subject to distribution, even if merger is applicable (Domestic Relations Law § 236 [B] [1] [c]). The only appraisal offered into evidence was by Zweifler Financial Research, an expert paid for by plaintiff.
The appraisal before the court took into consideration defendant’s specialty of cardiology, the need or demand for such a speciality as well as the fact that most of defendant’s patients pay through third-party or insurance coverage. Additionally, the appraiser noted that the practice is now beyond the start-up phase (i.e., much medical equipment has already been purchased). Of added concern was the fact that defendant has taken large deductions for the rental and depreciation for a *299 luxury automobile (a Mercedes Benz) and the fact that it appears that defendant has commingled his own personal "overhead” with the operating expenses of the practice.
The court accepts the appraiser’s evaluation of the practice at $75,000 as of February 1988. The approach he took, especially taking into account the various apparent personal expenditures paid for by the practice, is entirely appropriate. Particularly egregious was the fact that automobile expenses consistently amounted to over 15% of gross receipts for the practice. These expenses occurred from the inception of the practice and amounted to $14,916 in 1986 (a year when the practice showed a tax loss of $2,884). Thus, the appraiser’s primary use of a price-to-cash-flow ratio approach while adding back in the various personal expenses is legitimate. Using this method a value of $74,700 was obtained.
•The value obtained by the price-to-cash-flow ratio approach was confirmed by the price-to-revenue ratio approach value of $70,050 and the discounted cash flows approach value of $77,800.
In order to determine the issue of the value of defendant’s medical license, the court must address the concept of merger. The development of the concept of merger (that a professional license at some point no longer has a value of its own but rather is merged into the professional practice) began almost as soon as it was determined in O’Brien v O’Brien (66 NY2d 576) that a medical license was marital property subject to equitable distribution (see, Korman v Korman, NYLJ, Sept. 16, 1986, at 13, col 4 [Sup Ct, Kings County]).
The courts have also wrestled with the idea of when does merger occur. In the recent case of Marcus v Marcus’(137 AD2d 131), the Appellate Division, Second Department, addressed this issue of merger. The court determined as follows (supra, at 140): "In reaching the foregoing result, we note that in some cases it would be appropriate to conclude that a spouse’s license and practice have not merged thereby permitting the other spouse to receive an award for his or her share of the license. For example, if the licensed spouse’s practice was newly established and had not yet developed to its full potential at the time of valuation, the license should be regarded as a separate asset apart from the practice (see, Maloney v Maloney, NYLJ, Apr. 15, 1986, at 16, col 3, affd 137 AD2d 666 [2d Dept, Feb. 16, 1988]; see also, Cronin v Cronin, 131 Misc 2d 879). This same result would be appropriate in a *300 situation in which a licensed professional chooses to sell his or her ongoing successful practice, move to another location, and at the time of the commencement of the divorce action, intends to open or has recently opened another practice on a full- or part-time basis. In that case, unlike instances in which the licensed spouse has completely retired, the license has reemerged as a significant and valuable asset similar to the factual situation in O’Brien v O’Brien (66 NY2d 576, supra) and thus the other spouse should be entitled to share in the value of the license” (emphasis added).
Thus, applying the reasoning of Marcus (supra) to the present case a partial merger of defendant’s license into his practice of medicine has taken place. The practice is still relatively new. However, even plaintiff's expert conceded that the formative years of the practice have passed. Therefore, part of defendant’s medical license has merged into his part-time practice (cf., Vanasco v Vanasco, 132 Misc 2d 227).
More importantly, and what makes this case particularly interesting is the fact that defendant is also using his license by working full time as a salaried physician at a hospital. This separate use of the license obviously cannot be said to be merged into his part-time practice. Hence, defendant’s medical license insofar as it enhances his earning capacity and permits him to retain his position as a staff physician at a hospital must be evaluated as a separate asset apart from the part-time practice. That part of the asset (the medical license) being used at the hospital has not merged into the part-time practice.
The evaluation of a license hinges on the enhanced earning capacity that the license affords its recipient (O’Brien v O’Brien, supra, 66 NY2d, at 586). In the present case, the court is only concerned with the enhanced earning capacity afforded to defendant by the license which has not merged into the part-time practice.
Plaintiff’s expert in the case at bar based his evaluation of defendant’s license on the earning capacity of an average cardiologist/internist. However, in the present case, the court knows what defendant is actually earning since he is a salaried employee. Therefore, there is no need to talk in terms of a hypothetical cardiologist. The court can gauge the value of the license and specialty (insofar as it permits him to undertake his present position) by use of his own salary. Such an approach will result in an evaluation of only that part of the *301 license being used in his staff position while avoiding evaluating that part of the license which has been merged into the part-time practice.
- Additionally, by using defendant’s actual salary the court is not overvaluing the license nor penalizing defendant for taking a salaried position rather than a separate practice. (See, e.g., Florescue, Equitable Distribution — Professional Licenses, NYLJ, Aug. 16, 1988, at 3, col 1.)
In order to evaluate defendant’s enhanced earning capacity due to his license, the court, using plaintiff’s expert’s approach, will calculate the differential between his salary and that of a college graduate of defendant’s age and racial group. Furthermore, while the plaintiff’s expert used a Keogh account figure to determine a differential (or calculation of defendant’s income) accounting for taxes, the court will eliminate this calculation since a Keogh account is not available to salaried employees. The use of a 15% deductions factor for taxes does seem reasonable however. Hence, from defendant’s 1988 salary of $58,000 obtained from defendant’s statement of net worth is subtracted deductions of 15% yielding $49,300. Using a total tax rate of approximately 33% as used by the expert and accounting for all taxes (Federal, State and local) produces taxes of $16,269. The net income is $33,031.
For the control group (Black college graduates), the income is $28,244. The 15% deductions are $4,237 for an income subject to tax of $24,007. Using a tax rate of approximately 17% again used by the expert and accounting for all taxes produces taxes of $4,081.19. The net income is thus $19,925.81.
To obtain the net income differential, or enhanced income due to the license, it is merely necessary to subtract defendant’s net income from that of the average college graduate to whom the court is comparing him. The differential is rounded out to $13,105.
While plaintiff’s expert used a floating percentage to account for the change in the differential based upon the expectation that a cardiologist would put more or less time into his or her practice, that is not appropriate here where the court is evaluating the license used to enhance the income of a salaried doctor. Thus, a 5% increase per annum in the differential is appropriate to account for increases in salary due to inflation (see, e.g., O’Brien v O’Brien, 66 NY2d 576, 582, supra). Projecting the differential out to age 65 yields a total differential of $669,841.11.
*302 The court will however adjust the total enhanced earning capacity to account for the present value of the increased earning power. The court used a fixed rate of 10% for the 25 years remaining in defendant’s work life, relying on plaintiffs expert’s conclusion of the number of years that defendant can be expected to work (see also, O’Brien v O’Brien, supra, 66 NY2d, at 582). While plaintiffs expert used a floating percentage rate all around 10% in order to attempt to account for potential market fluctuations, the court thinks it better to use a fixed rate of 10% since that will take into account fluctuations in and around the rates predicted by plaintiffs expert without having to act as a fortune teller as to the actual ups and downs of the rates. The court, like plaintiffs expert, reduced the enhanced earning differential to a present value on a year-by-year basis.
The court used the present value table contained in the New York Pattern Jury Instructions (vol 1, Appendix C, 1988 Cum Supp, at 440-441 [2d ed]) to determine the multiplier for each succeeding year. (Cf., Maloney v Maloney, NYLJ, Apr. 15, 1986, at 16, col 3 [Sup Ct, Richmond County], affd 137 AD2d 666.) Thus, as an example the initial first year differential of $13,105 is multiplied by .91 to yield $11,925.55 as its present value. The second year differential of $13,760.25 (increased by 5% or $655.25 over the first year figure) is multiplied by .83 to yield $11,421.01 as its present value. This process was continued for the 25 years of defendant’s expected employment. The resulting value of defendant’s medical license, insofar as it is not merged into the part-time medical practice, is $183,527.24.
The parties each have Individual Retirement Accounts (IRAs) in their own names. These IRAs are undisputed to be marital property. Plaintiff has approximately $7,000 in her account. Defendant has approximately $12,000 in his IRA.
In regard to the various other retirement assets the parties have accumulated, defendant has a pension plan with the HHC. Since no other value of this account was offered, the court, using the conceded figure of $20,000, will include this money as a marital asset as retirement/pension funds clearly are categorized (see, Majauskas v Majauskas, 61 NY2d 481).
In dispute as to its categorization is property located at 766 East 39th Street, Brooklyn, New York. The property was purchased in 1985 in the name of defendant and one Hazel McIntyre. It is not the type of property statutorily exempted from being held to be marital property, to wit, separate *303 property (Domestic Relations Law § 236 [B] [1] [d]). Thus, the interest in 766 East 39th Street, whatever it might be, is marital property (Domestic Relations Law § 236 [B] [1] [c]; see, Price v Price, 69 NY2d 8; Marcus v Marcus, 137 AD2d 131, supra; Nolan v Nolan, 107 AD2d 190). The deed indicates that defendant and Ms. McIntyre took title as "joint tenants with rights of survivorship”. As such each holds a one-half interest in the property.
Plaintiffs expert appraised the property. The court evaluates the property as of March 4, 1988, immediately before trial and the date used by the plaintiffs appraiser at a value of $175,000 with a net equity after subtracting the mortgage of $97,000. Thus, defendant’s one-half share of this marital asset is $48,500.
Therefore, the parties have amassed $803,360 in marital assets subject to equitable distribution. To summarize, the marital assets are as follows:
TABLE A
Evalation of Marital Assets
ASSET NET VALUE
1. Marital Residence $307,000
2. 294 E. 45th Street Property $142,000
3. Florida Property $ 8,333
4. Medical Practice $ 75,000
5. Medical License $183,527
6. Plaintiffs IRA $ 7,000
7. Defendant’s IRA $ 12,000
8. Removed Funds From Defendant’s TDA $ 20,000
9. 766 E. 39th Street Property $ 48,500
TOTAL $803,360
b. DISTRIBUTION-DIVISION OF EACH ASSET
The next step is to equitably distribute the marital property. The development of the marital residence located at 931 Ocean Avenue is clearly the result of equal labors by the parties. The same can be said of the property at 294 East 45th Street, the original marital residence. The parties bought and maintained these properties with money that they both earned. They both worked to make the properties a home and when they moved to 931 Ocean Avenue, they both took part in the operation of the 294 East 45th Street properties. *304 Accordingly, and in light of the long-term nature of this marriage (see, Miller v Miller, 128 AD2d 844; Ahrend v Ahrend, 123 AD2d 731) the value of the properties shall be divided equally between them. They are thus each entitled to $224,500 from the properties.
In terms of defendant’s medical license, clearly plaintiff had a large part in obtaining this asset. She was the prime source of income while defendant went to medical school. Plaintiff also was the primary caretaker of the children at the same time in order to permit defendant to study. Plaintiff’s contributions were similar to those of the wife in O’Brien (66 NY2d 576, 585, supra). However, plaintiff’s contributions went beyond those in O’Brien in that it is a long-term marriage and plaintiff’s economic support which resulted in the license is clearer in the case at bar. Therefore, while the distribution should be similar as that in O’Brien a more equal distribution is warranted here. On the basis of the parties’ contributions, both direct and indirect (Domestic Relations Law § 236 [B] [5] [c], [d] [6]), and the long duration of the marriage the court divides the value of the medical license 50% for defendant and 50% for plaintiff. (See, O’Brien v O’Brien, supra; Miller v Miller, 128 AD2d 844, supra; Domestic Relations Law § 236 [B] [5] [c], [d] [2].)
Unlike the medical license, plaintiff has not contributed directly to the value of defendant’s medical practice. However, she did indirectly contribute to the asset by among other things being primarily responsible for raising the family (Domestic Relations Law § 236 [B] [5] [d] [6]). Based upon these contributions, the practice shall be divided 70% or $52,500 for defendant and 30% or $22,500 for plaintiff.
The interest in land in Florida shall be divided equally based upon their equal contributions to it. Each party shall have title and possession of the automobiles and items of personal property, such as furniture, currently in their possession. Each shall also maintain title to their own Individual Retirement Accounts. However, given the parties’ contribution and the fact that these funds would otherwise have been available to the family unit, plaintiff must be given credit for the difference in the value of the accounts. Additionally, the $20,000 taken by defendant from his TDA shall be divided equally $10,000 each.
Furthermore, defendant took marital funds to purchase a one-half interest in 766 East 39th Street. The one-half interest *305 in the property shall be divided equally between the parties yielding $24,250 to each.
In making these determinations of equitable distribution the court is mindful that this is a marriage of many years in which both have equally contributed. As the courts have explained, "Although equitable distribution is not necessarily equal distribution (see, Rodgers v Rodgers, 98 AD2d 386, 391), where, as here, both spouses equally contribute to a marriage that is of long duration, a division of marital assets should be made that is as equal as possible (see, e.g., Ahrend v Ahrend, 123 AD2d 731; Bisca v Bisca, 108 AD2d 773, appeal dismissed 66 NY2d 741)” (Miller v Miller, 128 AD2d 844, 845, supra). In Miller the court was addressing a marriage of almost 20 years. In the present case a marriage of over 15 years is at stake. It is a long-term marriage. Therefore, taking into consideration the circumstances of the case and of the respective parties, and in addition the probable future financial circumstances of each of them (see, Domestic Relations Law § 236 [B] [5] [c], [d]) the court has determined that the parties are entitled to an equal share in the value of almost all the marital assets.
The breakdown of the equitable share each party will have in each asset is listed in the following table.
TABLE B
Division of Equity in Each Asset
Dollar figures are the amount of equity awarded to each party from the particular asset. The numbers in parentheses are the percentage of total equity of the asset award to the party.
Asset Plaintiff Defendant
1) Marital Residence $153,500.00 (50%) $153,500.00 (50%)
2) 294 E. 45th Street Property $ 71,000.00 (50%) $ 71,000.00 (50%)
3) Florida Property $ 4,166.50 (50%) $ 4,166.50 (50%)
4) Medical Practice $ 22,500.00 (30%) $ 52,500.00 (70%)
5) Medical License $ 91,763.50 (50%) $ 91,763.50 (50%)
6) Plaintiffs IRA $ 3,500.00 (50%) $ 3,500.00 (50%)
7) Defendant’s IRA $ 6,000.00 (50%) $ 6,000.00 (50%)
8) Removed Funds From Defendant’s TDA $ 10,000.00 (50%) $ 10,000.00 (50%)
9) 766 E. 39th Street Property $ 24,250.00 (50%) $ 24,250.00 (50%)
TOTAL $386,680.00 $416,680.00
c. DISTRIBUTION-DISTRIBUTIVE AWARD
Rather than order the sale of the various assets, the court will distribute whole items of property to the parties and thereby offset one against the other (see, O’Brien v O’Brien, 66 *306 NY2d 576, 588-589, supra; Rosenberg v Rosenberg, 126 AD2d 537; Capasso v Capasso, 129 AD2d 267, lv denied 70 NY2d 988; Domestic Relations Law § 236 [B] [5] [e]). Plaintiff is granted exclusive ownership of the marital residence for equity of $307,000. Defendant is granted similar ownership over his practice and of course defendant will possess his medical license for equity of $258,527 ($75,000 for the practice and $183,527 for the license). Additionally, defendant shall retain the total interest in the property located at 766 East 39th Street ($48,500) as well as the property in Florida ($8,333). Both parties shall retain their own IRA ($7,000 for plaintiff and $12,000 for defendant). By retaining ownership in their own IRAs neither party shall suffer from a tax penalty for early withdrawal. Defendant is also credited with taking the $20,000 from his TDA.
Since there are insufficient assets to cover an intact transfer to either party of the property located at 294 East 45th Street, the property is to be sold. The parties shall equally divide the net proceeds of the sale of the property thereby permitting each to have sizable liquid assets in addition to the other nonliquid property. However, in light of the fact that both parties seek to retain this property both shall have the right of first refusal as against any bona fide purchaser.
The distributive award is summarized in the following table.
table c
Distributive Award of Each Asset
Dollar figures represent the equity credited to each party which results from the court’s distribution of that particular asset
Asset Plaintiff Defendant
1) Marital Residence $307,000 $ 0
2) 294 E. 45th Street Property $ 71,000 $ 71,000
3) Florida Property $ 0 $ 8,333
4) Medical Practice $ 0 $ 75,000
5) Medical License $ 0 $183,527
6) Plaintiff’s IRA $ 7,000 $ 0
7) Defendant’s IRA $ 0 $ 12,000
8) Removed Funds From $ 0 $ 20,000 Defendant’s TDA
9) 766 E. 39th Street Property $ 0 $ 48,500
TOTAL $385,000 $418,360
*307 This distribution plan does not result in the exact division of equity sought by the court. Plaintiffs equity is $1,680 less than it should be ($385,000 as opposed to $386,680) and defendant’s equity is $1,680 more than it should be ($418,360 as opposed to $416,680). These discrepancies are easily seen by a comparison of the totals from Table B with those from Table C. Hence, defendant must pay plaintiff $1,680 to properly credit plaintiff for the equitable award of $386,680 that the court previously set out. This $1,680 shall be paid out of defendant’s share of the proceeds from the sale of the property located at 294 East 45th Street.
(The discussion on the issues of custody, maintenance, child support, arrears and counsel fees were edited out for purpose of publication.)
In determining these issues of equitable distribution, maintenance and child support, and in addition to the factors specified above, this court has considered the income and property of each party at the time of the marriage and all other relative times, the duration of the marriage, the age, health and economic future of these parties, as well as the direct and indirect contributions each has made to the development of the marital assets.