OPINION OF THE COURT
Edward M. Horey, J.
The court makes the following findings upon the evidence adduced at the trial.
1. The jurisdictional requirements of section 230 of the Domestic Relations Law have been proved.
2. The defendant is presently living with a woman other than his wife, viz., one Trina O’Hara.
*216 3. The defendant has sired two children by his paramour, Trina O’Hara, and has acknowledged his paternity of such children.
4. The defendant within the last five years of the marriage indulged in the use and abuse of cocaine and marihuana.
5. The defendant failed and refused to attend rehabilitation services for drug abuse although urged by the plaintiff to do so.
6. The defendant failed and refused to attend marriage counseling services although urged by the plaintiff to do so.
7. The conduct and action of the defendant had a detrimental effect upon the physical and mental health of the plaintiff.
Upon the foregoing facts this court reaches the legal conclusion that the defendant is guilty of cruel and inhuman treatment under the statutory and decisional law of this State. Accordingly, the court grants the divorce prayed for in the complaint.
There follows the decision of the court in reference to equitable distribution of property, support and maintenance.
defendant’s law practice and license to practice
The defendant’s total annual income represented a return from both the practice of law and the operation and management of his medical service corporations.
Analyzing first the law practice, it appears that the defendant has practiced law for 12 years. The practice is thus not a new one. It has well passed its formulative years. The defendant’s income from the practice of law has peaked. As a consequence it would be unjust to do as the plaintiff urges, viz., to treat the license and the practice as separate entities. So doing would give the plaintiff a double recovery.
It could be urged that there is only a partial merger of the license and the law practice and that a valuation be placed on each part as was done in Jones v Jones (144 Misc 2d 295). The difficulty with attempting to follow the concept in Jones v Jones is that there the doctor had a part-time medical practice and a part-time employment as a radiologist. That part of the unmerged portion of his license and practice was devoted to a salaried employment of his medical skills. Thus, whether as a practitioner or an employee he was utilizing his license. In the case at bar, only part of the defendant’s time is engaged in the practice of law; the remainder is occupied by employment in a *217 field wholly unrelated to his license, viz., managing a health service agency.
In the instant case the court concludes that there has been a merger of the license and the practice.
While due and proper consideration should be and will be given to that part of the defendant’s employment which is unrelated to his license to practice law, it is the opinion of this court that in the case at bar the proper procedure is to value the practice and the license as a single asset and render one distributive award to the plaintiff. (See, Marcus v Marcus, 137 AD2d 131 [2d Dept 1988].)
We have been instructed by the Court of Appeals that the proper procedure for evaluating a license and by decision a merged license and practice is to calculate the differential between the income received by the defendant from his practice and that of a college graduate of defendant’s age and racial group. Such computation has been held to determine the enhanced earning capacity due to the license. (O’Brien v O’Brien, 66 NY2d 576; Jones v Jones, supra.)
Because the defendant at bar is not devoting his full time and attention to the practice of law, it would be patently unfair to compare his income from a part-time practice to the income of a full-time employed college graduate of defendant’s age and racial group. Basic fairness demands a comparison of like amount of work.
In two analytical articles in the New York Law Journal, the author, Leonard G. Florescue, reviewed the appellate court decisions dealing with the problem of merger of license and practice and part-time practice as they related to equitable distribution in matrimonial matters. His conclusion is that this is an emerging field of the law with several problems left unanswered and some solutions made which are contradictory. (See, Merger, Maturity and Valuation, NYLJ, June 7, 1989, at 3, col 1; 'Actual Use’ for License Valuation Purposes, NYLJ, Oct. 17, 1989, at 3, col 1.) This court’s research has not discovered any appellate decision which deals precisely with the one presented in the case at bar.
As previously determined and binding on this court by decision of the Court of Appeals is the concept that the proper means of evaluating a license or a practice merged in a license is a comparison between the monetary return from the practice and the monetary return of a college graduate of the same age and racial group. (O’Brien v O’Brien, supra; Jones v *218 Jones, supra.) Accepting that concept this court posits that a fair means of evaluating the value of a license which has been merged in a practice of a profession which is being practiced on only a part-time basis is to compare the monetary return from such part-time practice with the monetary return of a college graduate of the same age and racial group working on a like part-time basis. The court adopts and applies the stated method of evaluation not only because it believes it to be fair but because the paucity of evidence in the case at bar forecloses any other method.
While there is no explicit testimony on the issue, it appears from a review of all the evidence and exhibits that the defendant in the case at bar spent approximately 25% of his time in the practice of law and 75% in the management of his corporate businesses. That such percentages are reasonably accurate is corroborated by a comparison of the monetary return to the defendant from his practice of law and the monetary return from his business enterprises.
This court finds upon all the evidence that the average annual income of the defendant from the practice of law is $22,523. The court finds upon a review of all the evidence that the average annual income of the defendant from his combined legal practice and his business engagements is $93,628. The percentage return from law practice of total return is 24%. Because that percentage fairly represents the percent of the defendant’s time in the practice of law in the opinion of this court it should be applied to the earning of a college graduate of defendant’s age and racial group, working 24% of his time.
Upon review of all the evidence the annual salary of such a college graduate is determined to be $50,830.
Applying the percentage of 24% to the $50,830 average annual of the college graduate produces a figure of $12,199. It is that figure that should be compared to the average annual income of the defendant from his law practice, viz., $22,523.
Subtracting $12,199 from $22,523 the difference is $10,324. It is determined that such figure of $10,324 represent the excess income to the defendant from the use of his license to practice law on a yearly basis.
The plaintiffs expert used a discount rate of 10% to compensate for anticipated interest rates and inflation, in computing the present value of the differential of $10,324 over the 26-year period determined to be the work life expectancy of the *219 defendant. This court adopts such percentage. Note is made that a similar discount percentage was adopted by the court in Jones v Jones (supra).
Turning now to the present value tables contained in Appendix C of the New York Pattern Jury Instructions (1 NY PJI2d 516 [1989 Supp]) to determine the multiple for 26 years of anticipated employment of the defendant, the court adopts the figure of 9.16 there set forth.
Multiplying the differential in income of $10,324 by the multiplier of 9.16 the court finds the present value of the law practice to be $94,568.
Note is made that this court did not apply any per cent increase per annum to the differential of $10,324 for increases resulting from inflation. This is for the reason that the court accepts the defendant’s evidence that growth in annual income from the practice of law is the same growth in annual salary of that of a comparable college graduate in a rural area.
In making the above computation of the value of the defendant’s merged law practice and license, the court notes that it utilized the figures set forth on the defendant’s 1985, 1986 and 1987 income tax returns in determining average annual income from all sources. The court also utilized the gross figure on such returns for the practice of law but reduced them by crediting the defendant’s testimony that his overhead in the practice of law was 57% of the gross. Such tax returns were received in evidence. This court did not use later tax returns for the simple reason that they were nonexistent and the defendant consistently ignored and disobeyed the orders of this court to furnish information concerning them to the plaintiff. To accept as evidence merely the defendant’s testimony of what he anticipates tax returns after 1987 might show in the opinion of this court would be improper and unfair to the plaintiff.
The actual calculations used by the court for the determination of total income from all sources is as follows:
The actual calculations used by the court for the determination of total income from all sources is as follows:
1985 $81,811 1986 85,594 1987 113,480 280,885 -f- 3 = average $93,628
The actual calculations used by the court for the determina *220 tion of average net profit from the practice of law is as follows:
1985 -$49,112 1986 - 50,237 1987 - 57,791 157,140 -f 3 = average gross — $52,380 average gross overhead (a) Gross profit Gross profit Gross profit Total (b) $52,380 X .57 29,857 (0 $52,380 - 29,857 $22,523 — average overhead — average gross profit — average overhead — average net profit.
SOUTHERN TIER HOME HEALTH SERVICES, INC.
The court turns now to a valuation of the defendant’s business known as Southern Tier Home Health Services, Inc.
On this score there were only two tax returns for this corporation introduced into evidence. The paucity of this evidence is directly attributed to the failure and refusal of the defendant to obey the orders of the court and furnish later tax returns to the plaintiff. For such disobedience the defendant was found in contempt on at least two occasions.
The gross profit from the corporation per the returns for the year 1986 was $695,273 and for the year 1987 was $720,467.
The court credits the defendant’s testimony that such indicated gross profits were inaccurate for the reason that the corporation subsidized the plaintiff’s law practice by paying for a secretary and rent. The court calculates the amount of the deficiency in the gross profit of the corporation for 1986 to be $21,051 and for 1987 to be $22,267.
The foregoing calculation of deficiency in corporation gross profits for 1986 was done as follows:
(a) Gross receipts from law practice per 1986 return $50,237 Multipled by .57 overhead X .57 Defendant’s claimed overhead $28,635 (b) Gross receipts from law practice per 1986 return $50,237 Less computed overhead — 28,635 Defendant’s claimed and court-determined profit $21,602
*221 (c) Net profit from law practice as shown per tax return of 1986 $40,653 Less defendant’s claimed profit — 21,602 Amount paid by corporation for subsidizing defendant’s law practice $21,051
(d) Amount of subsidizing to defendant’s law practice ’ $21,051 Added to gross profit and per tax return $695,273 Computed correct gross profit $716,324
The foregoing calculation of deficiency in gross profit for 1987 was as follows:
(a) Gross receipts from law practice per 1987 return Multiplied by .57 Defendant’s claimed and court-determined overhead $57,791 X .57 $32,941
(b) Gross receipt from law practice per 1987 return Less computed and determined overhead (c) Net profit from law practice per 1987 return Less determined profit $57,791 - 32,941 $24,850 $47,117 - 24,850 Amount paid by corporation for subsidy of defendant’s law practice 22,267
(d) Amount of determined subsidy 22,267 Added to gross profit of law practice per 1987 return 720,467 $742,734
The foregoing computation of corrected gross profits leads to the following evaluation of the corporation:
1986 corrected gross profit $716,324 (b) Corrected net profit . Computed on tax return $34,082 Plus subsidy to. . defendant’s law practice 21,051 55,133 (c) Excess officer's salary (see explanation following) 2,300 Add (b) and (c) $57,433 1987 corrected gross profit $742,734 (b) Corrected net profit
*222 Computed on tax return $8,205 Plus subsidy to defendant’s law practice 22,267 $30,472 (c) Excess officer’s salary (see explanation following) 23,800 Total (b) and (c) $54,272.
Average of gross profits — 1986 ($57,433) and 1987 ($54,272) equals $55,852.50.
Accepting plaintiffs multiple of three for purposes of capitalization of earning as fair results in a computation of $55,852.50 X 3 which equals $167,557.50 which is found and determined as the fair market value of the corporation.
The computation of the excess of officer salary is made by crediting the defendant’s testimony that a replacement to do his services would cost $40,000. It is accepted accounting practice that in closely held corporations excess officers’ salaries should be added to earnings. (3 Foster, Freed and Brandes, Law and the Family New York § 15:3 [2d ed], and authorities there quoted.)
[Portions of opinion omitted for purposes of publication.]