LUCYNA M. SONEK v. MOJMIR J. SONEK

No. 9123DC122

(Filed 4 February 1992)

1. **Divorce and Separation § 139 (NCI4th)— equitable distribution — salaried doctor — goodwill**

   The trial court erred in an equitable distribution action by finding that defendant's medical practice at the time of the separation had goodwill to be included as a marital asset where defendant at the time of the separation was a salaried employee of the medical association. A salaried employee who maintains no ownership interest in the particular place of employment does not possess goodwill.

   Am Jur 2d, Divorce and Separation § 899.

   **Divorce and separation; goodwill in medical or dental practice as property subject to distribution on dissolution of marriage. 76 ALR4th 1025.**

2. **Divorce and Separation § 165 (NCI4th)— equitable distribution — distributive award**

   The trial court's distributive award to plaintiff in an equitable distribution action was not erroneous. No North Carolina court has held that distributive awards are authorized only when a distribution in kind is impractical, and the only apparent limit to the trial judge's discretion concerns distributive awards payable for more than six years after the marriage ceases. Furthermore, the trial court found as fact that a complete distribution in kind was not practical and that a distributive award was necessary to achieve equity between the parties.

   Am Jur 2d, Divorce and Separation §§ 930, 931.

3. **Evidence and Witnesses § 2488 (NCI4th)— equitable distribution — physician — expert witness fee**

   The trial court did not err in finding that a physician testified as an expert witness rather than as a fact witness where the main purpose for his testimony was to establish the extent of plaintiff's future disability due to rheumatoid arthritis. Furthermore, the trial court did not abuse its discretion in awarding $200 per hour to the doctor where he was

subpoenaed as a witness, expended approximately three and one-half hours of his time to testify at trial, and claimed that his normal fee for expert testimony was $500 per hour.

**Am Jur 2d, Divorce and Separation § 942.**

4. **Appeal and Error § 364 (NCI4th) — child support — attorney fees — order not included in record — not considered**
     The Court of Appeals did not reach the merits of defendant's contention that the trial court erred by awarding plaintiff attorney fees in a child support action where a copy of the child support order was not included in the record on appeal.

**Am Jur 2d, Appeal and Error § 547.**

Judge GREENE concurring in the result.

APPEAL by defendant from judgment entered 29 September 1990, and order entered 28 September 1990 in WILKES County District Court by *Judge Michael E. Helms*. Heard in the Court of Appeals 7 November 1991.

*McElwee, McElwee & Warden, by William H. McElwee, III, for plaintiff-appellee.*

*Elliot & Pishko, P.A., by David C. Pishko, for defendant-appellant.*

WYNN, Judge.

The plaintiff and defendant were married on 18 June 1972, in Chicago, Illinois. Two children were born of the marriage. On 5 June 1990, the parties obtained a judgment of absolute divorce.

The defendant, husband, is a medical doctor, specializing in obstetrics and gynecology. Defendant set up his own medical practice in Mocksville, North Carolina, in November 1984. Thereafter, in April 1986, defendant became a salaried employee of Brushy Mountain Ob-Gyn Associates, P.A. ("Brushy Mountain"), located in Wilkesboro, North Carolina, and owned solely by Charles F. Whicker who employed defendant pursuant to a written Employment Agreement.

At the time defendant and plaintiff separated, defendant was an employee of Brushy Mountain and held no ownership interest in the association. Five days after the separation, defendant ended

SONEK v. SONEK

[105 N.C. App. 247 (1992)]

his employment with Brushy Mountain and subsequently opened his own practice in Wilkesboro, North Carolina.

Plaintiff filed an action for equitable distribution of marital property, child custody, child support, and alimony on 23 November 1988. From the equitable distribution judgment and the child support order, defendant appealed.

## I.

[1] The appellant contends that the trial court committed error in finding that his medical practice at the time of the separation had goodwill to be included as a marital asset. He argues that a salaried employee of a professional association who has no owner-ship interest in the association cannot have personal goodwill for equitable distribution purposes. We agree.

The question of whether a salaried employee with no owner-ship interest in the respective business may have personal goodwill is a matter of first impression for our courts. A similar issue has been addressed, however, by the Washington Supreme Court in the case of *In re Marriage of Hall*, 103 Wash. 2d 236, 692 P.2d 175 (1984), wherein the Court considered the division of marital property of two physicians. The husband in *Hall* owned his own practice, and the wife worked as a salaried employee at a medical school. In rejecting the husband's contention that the wife's practice had professional goodwill, the Court reasoned as follows:

> Once goodwill is distinguished from earning capacity, the error becomes apparent in the argument that a practicing pro-fessional and a salaried professional, with equal earning capacities and educations, both have goodwill. Both have earn-ing capacities, and, yet, only the practicing professional has a business or practice to which the goodwill can attach. The practicing professional brings an earning capacity to the prac-tice comprised of skill and education. The goodwill, comprised of such things as location, referrals, associations, reputation, trade name and office organization, can directly supplement this earning capacity. When the practicing professional dies, retires or moves, he takes his skill and education with him, but the goodwill factors must be transferred or otherwise left behind. The goodwill may exist even though it is not marketable.

> The salaried professional also brings an earning capacity comprised of skill and education to the position. However,

when the salaried professional leaves a position, he takes everything with him to the new position. There is nothing that increased his earning capacity in the old salaried position that cannot be taken to the new position.

*Id.* at 241-42, 692 P.2d at 178 (citation omitted).

The Washington Supreme Court's decision in *Hall* is consistent with the concept of goodwill as developed by the courts of this State. Our Supreme Court has defined goodwill in the following manner: "Goodwill exists as property merely as an incident to other property rights, and is not susceptible of being owned and disposed of separately from the property right to which it is incident." *Maola Ice Cream of North Carolina, Inc. v. Maola Milk and Ice Cream Co.*, 238 N.C. 317, 321, 77 S.E.2d 910, 914 (1953). *See Faust v. Rohr*, 166 N.C. 187, 81 S.E. 1096 (1914). In *Poore v. Poore*, 75 N.C. App. 414, 331 S.E.2d 266, *disc. review denied*, 314 N.C. 543, 335 S.E.2d 316 (1985), this Court delineated the factors relevant in determining goodwill as "the age, health, and professional reputation of the practitioner, the nature of the practice, the length of time the practice has been in existence, its past profits, its comparative professional success, and the value of its other assets." *Id.* at 421, 331 S.E.2d at 271.

In the case at bar, appellant had no ownership interest in Brushy Mountain on the date of the separation. The decisions in *Poore* and *Maola* demonstrate that there is no goodwill in this situation. The factors discussed in *Poore*, such as the past profits of the practice and the value of its assets, are obviously inapplicable to a non-owner salaried employee since they presume the existence of an ownership interest. Additionally, under the *Maola* Court's definition, goodwill does not exist in the absence of a property right. We, therefore, find that a salaried employee who maintains no ownership interest in the particular place of employment does not possess goodwill.

The trial court, in the instant case, concluded that defendant's medical practice had goodwill with a value of $31,419.92 on 25 June 1988, the date of separation. It awarded the goodwill to defendant. The court also stated that "[i]f the defendant's medical practice had not had goodwill on June 25, 1988, or if this goodwill had a value less than that determined, then the Court would have distributed the marital property with a greater percentage of it being distributed to the plaintiff." Because the trial judge made

his percentage award based on the presence of the $31,419.92 good-will, we remand this case to the trial court.

While we recognize an inequity may result from our holding here today and note that Judge Greene has suggested in his concurring opinion that such inequity may be cured by classifying the increased value, if any, of defendant's medical license as marital property, this issue was not raised by either of the parties on appeal. We, therefore, are without jurisdiction to address this issue. N.C.R. App. P. 10 (This Court's scope of review "is confined to a consideration of those assignments of error set out in the record on appeal."). Moreover, we note that one spouse's contribution to "help educate or develop the career potential of the other spouse" is currently a distributional factor that allows a trial judge to order an unequal division of marital property. N.C. Gen. Stat. § 50-20(c)(7) (1991). In the present case, the trial judge, in fashioning the original order, allowed himself sufficient latitude for curing any potential inequities resulting from our reversal of his goodwill determination. The trial judge, on remand, should eliminate the value of the goodwill and assign the proper percentage due to each spouse.

II.

Appellant also assigns error to the trial court's valuation of the goodwill of defendant's medical practice at $31,419.92 and the trial court's award to plaintiff of seventy-five percent of the marital property. We need not address these issues since we have decided that defendant possessed no goodwill. Furthermore, because the trial judge on remand must reassess the percentage award to plaintiff, we need not decide whether it was error to award seventy-five percent of the marital property to plaintiff.

III.

[2] Appellant also contends that the trial court committed reversible error by making a distributive award to plaintiff without allocating to her as many items of property as was practical. He argues that section 50-20(e) authorizes distributive awards only if a division in kind is impractical. We disagree.

The statute governing distributive awards provides, in pertinent part,

In any action in which the court determines that an equitable distribution of all or portions of the marital property in kind would be impractical, the court in lieu of such distribution shall provide for a distributive award in order to achieve equity between the parties. The court may provide for a distributive award to facilitate, effectuate or supplement a distribution of marital property.

N.C. Gen. Stat. § 50-20(e) (1991). In *Harris v. Harris*, 84 N.C. App. 353, 352 S.E.2d 869 (1987), this Court stated the directive under section 50-20(e) as an alternative test: "G.S. 50-20(e) directs the court to make a distributive award 'in order to achieve equity between the parties' in those cases where a distribution in kind would be impractical, and *otherwise* permits a distributive award in order 'to facilitate, effectuate or supplement a distribution of marital property.'" *Id.* at 362, 352 S.E.2d at 875 (emphasis added). No North Carolina court has held that distributive awards are authorized only when a distribution in kind is impractical. The only apparent limit to the trial judge's discretion concerns distributive awards payable for more than six years after the marriage ceases. See *Lawing v. Lawing*, 81 N.C. App. 159, 344 S.E.2d 100 (1986). Furthermore, the trial court found as fact that a complete distribution in kind was not practical and that a distributive award was necessary to achieve equity between the parties. Based on the foregoing, we find that the trial court's distributive award to plaintiff was not erroneous.

## IV.

[3] Appellant further assigns error to the trial court's award of an expert witness fee to Dr. Christopher Wise. Appellant contends that Dr. Wise testified as a fact witness rather than as an expert, and that there was no basis in the record to support the trial court's finding that $200 per hour was reasonable. We disagree.

In *Turner v. Duke University*, 325 N.C. 152, 381 S.E.2d 706 (1989), our Supreme Court discussed the distinction between a physician testifying as a fact witness and an expert witness: "Although, by general definition, all doctors may be considered experts in that they possess a specialized knowledge of medicine beyond that of the layman, not every role of a doctor as a witness in a legal controversy is in the capacity of an 'expert' witness." *Id.* at 167-68, 381 S.E.2d at 715. At issue in *Turner* was defendant's alleged failure to identify a physician as an expert witness. The Court

SONEK v. SONEK

[105 N.C. App. 247 (1992)]

concluded that the doctor was an ordinary fact witness because the focus of his deposition was his treatment and personal observations of plaintiff's medical condition rather than his opinion concerning the standard of plaintiff's care. *Id.* at 167, 381 S.E.2d at 715.

In the instant case, while it is true that Dr. Wise testified about his treatment of Mrs. Sonek's disease, he also gave his opinion as to the prognosis for her rheumatoid arthritis. Dr. Wise described, at length, the characteristics and treatment of rheumatoid arthritis. The main purpose for his testimony was to establish the extent of Mrs. Sonek's future disability. Accordingly, we find that the trial court did not err in determining that Dr. Wise testified as an expert witness.

Appellant further contends that there is no basis in the record to support the trial court's finding that $200 per hour was a reasonable fee for Dr. Wise's testimony. We disagree with appellant's contention. Dr. Wise was subpoenaed as a witness and expended approximately three and one-half hours of his time to testify at trial. Although Dr. Wise claimed his normal fee for expert testimony was $500 per hour, the court awarded only $200 per hour. We, therefore, hold that the trial court did not abuse its discretion in awarding $200 per hour to Dr. Wise. *See* N.C. Gen. Stat. § 7A-314 (1989).

V.

[4] Finally, the appellant argues that the trial court committed error by awarding the plaintiff attorney's fees in the child support action. In as much as appellant failed to include a copy of the child support order in the record on appeal, we are unable to reach the merits of this issue.

The judgment of the trial court is,

Affirmed in part, reversed in part, and remanded.

Judge PARKER concurs.

Judge GREENE concurs in the result with separate concurring opinion.

SONEK v. SONEK

[105 N.C. App. 247 (1992)]

Judge GREENE concurring in the result.

I agree with the majority that under current North Carolina law, goodwill exists only in the presence of an ownership interest in a business. *See Maola Ice Cream Co. v. Maola Milk & Ice Cream Co.*, 238 N.C. 317, 321, 77 S.E.2d 910, 914 (1953); *McLean v. McLean*, 323 N.C. 543, 558, 374 S.E.2d 376, 385 (1988) (professional association engaged in law practice); *Locklear v. Locklear*, 92 N.C. App. 299, 301-02, 374 S.E.2d 406, 407 (1988), *disc. rev. allowed*, 324 N.C. 336, 378 S.E.2d 794 (1989) (closely held corporation engaged in trucking); *Draughon v. Draughon*, 82 N.C. App. 738, 741, 347 S.E.2d 871, 873 (1986), *disc. rev. denied*, 319 N.C. 103, 353 S.E.2d 107 (1987) (sole proprietorship engaged in landscaping); *Poore v. Poore*, 75 N.C. App. 414, 420, 331 S.E.2d 266, 271, *disc. rev. denied*, 314 N.C. 543, 335 S.E.2d 316 (1985) (solely-owned professional association engaged in dental practice); *Weaver v. Weaver*, 72 N.C. App. 409, 414, 324 S.E.2d 915, 919 (1985) (partnership engaged in accounting). Accordingly, because the defendant-employee did not have an ownership interest in his place of employment, I agree that the defendant has no goodwill. As the following facts reveal, however, our holding will lead to an inequitable result if we fail to recognize as marital property the increase in value, if any, to the defendant-employee's medical license due to marital contributions, if any. I disagree with the majority that this issue has not been raised by either of the parties to this appeal. Defendant specifically argues in his brief that "the value [of his medical license] that accrued during his employment . . . should . . . be recognized as his separate property." In any event, to the extent that Rule 10 has been violated, in order to "prevent manifest injustice" and to "expedite decision in the public interest," I would suspend the rule, pursuant to Appellate Rule 2, and answer the question raised. *See State v. Petty*, 100 N.C. App. 465, 397 S.E.2d 337 (1990) (Court of Appeals "in its discretion" decided appeal filed in violation of Appellate Rule 10).

The following facts as found by the trial court are undisputed: At the time of the trial court's order, the plaintiff was 35 years old and the defendant was 38 years old. The plaintiff was just over 17 years of age and still in high school when she married the defendant. After their marriage, they moved to Ottawa, Canada where the plaintiff finished high school. The plaintiff continued her studies at the University of Ottawa and received a bachelor's degree and a master's degree in psychology. The defendant also graduated from the University of Ottawa where he received a

bachelor's degree, a medical doctorate degree, and later received his medical license. Throughout their marriage, the plaintiff was the primary, if not the sole, caretaker of the parties' home and children. Her efforts enabled the defendant "to complete his education and advance his professional career with minimal interference from family obligations." Furthermore, the plaintiff was always willing "to sacrifice to whatever extent was necessary in order to assure that the defendant would complete his education and have a successful medical career."

In 1974, the plaintiff developed rheumatoid arthritis. Realizing that her disease might prohibit the plaintiff from working, the parties "concentrated on developing the defendant's career in order that they might derive a comfortable standard of living from his medical practice." At the time of the trial court's order, the plaintiff suffered from "severe chronic active rheumatoid arthritis." The disease has totally and permanently disabled the plaintiff. She cannot work. At the time of the trial court's order, the plaintiff had custody of the parties' children despite her condition.

Because professional and business licenses are personal to their holders, are difficult to value, cannot be sold, and represent enhanced earning capacity, the vast majority of courts which have addressed the issue have held that such licenses are not property for purposes of equitable distribution. L. Golden, Equitable Distribution of Property § 6.19 (1983). Despite these concerns, however, our courts have recognized that professional and business licenses are property rights. *North Carolina State Bar v. DuMont*, 52 N.C. App. 1, 15, 277 S.E.2d 827, 836 (1981), *modified and aff'd*, 304 N.C. 627, 286 S.E.2d 89 (1982) (law license); *Parker v. Stewart*, 29 N.C. App. 747, 748, 225 S.E.2d 632, 633 (1976) (license to engage in occupation is property right). As the New York Court of Appeals has explained, "[a] professional license is a valuable property right, reflected in the money, effort and lost opportunity for employment expended in its acquisition, and also in the enhanced earning capacity it affords its holder . . . ." *O'Brien v. O'Brien*, 489 N.E.2d 712, 717 (N.Y. 1985) (medical license). Likewise, our General Assembly has recognized that such licenses are in fact property for purposes of the equitable distribution statute. N.C.G.S. § 50-20(b)(2) (1987 & Supp. 1991).

In North Carolina, "[a]ll professional licenses and business licenses which would terminate on transfer shall be considered

separate property." *Id.* However, the increases in value to separate property which are attributable to contributions of the marital estate are marital property. *Ciobanu v. Ciobanu,* 104 N.C. App. 461, 465, 409 S.E.2d 749, 751 (1991). Accordingly, the value of the defendant-employee's medical license at the date of marriage, if acquired before marriage, or when acquired, if acquired after marriage, is his separate property, and any increase in value to his medical license as of the date of separation which is attributable to marital contributions is properly deemed to have been acquired by the marital estate and is therefore marital property.[1] The trial court should make the factual determinations concerning values with the help of expert testimony. *See Poore,* 75 N.C. App. at 421, 331 S.E.2d at 271; *see also Jones v. Jones,* 543 N.Y.S.2d 1016, 1019-20 (Sup. Ct. 1989) (valuing the medical license of a salaried employee by calculating the differential between the physician-employee's salary and that of average college graduate of employee's age and racial group without medical license, by projecting that differential out to age 65, and then by reducing that figure to present value). This rule applies, however, only when the spouse is an employee. When the spouse possesses an ownership interest in a business in which he or she uses his or her license, our courts may not classify, value, and distribute both the increased value of the professional license and the value of the goodwill. This is so because whether the classification and valuation is of an owner's goodwill or of a non-owner's professional license, each essentially represents a value based on enhanced earning capacity. It would be inconsistent with principles of fairness to allow distribution of both. *See* B. Turner, Equitable Distribution of Property § 6.19A, at 183 (Cum. Supp. 1991).

I realize that valuing such licenses may be difficult, but that problem has not deterred our courts from recognizing that such licenses are property nor has it deterred the General Assembly from identifying and classifying such property as separate. Likewise, difficulties in valuing a medical license cannot support the failure to recognize the marital aspects, if any, of any increases in value of such property. *See O'Brien,* 489 N.E.2d at 718. Furthermore,

---

1. Measuring the increase in value of a professional license is very similar to the valuation required where a party acquires an interest in a business before marriage. In such cases, the value of the party's business interest at the date of marriage is his or her separate property and any increase in value of the business interest due to marital contributions is marital property.

the trial court is presently required to value and consider professional licenses in ordering the distribution of marital property. N.C.G.S. § 50-20(c)(1) (1987 & Supp. 1991); *Miller v. Miller*, 97 N.C. App. 77, 80, 387 S.E.2d 181, 184 (1990). Finally, the failure to recognize this potential source of marital property would elevate form over substance in that the spouse of a sole medical practitioner would be entitled to share in the enhanced earning capacity (goodwill) of his or her spouse while the spouse of an employee would not be entitled to share in the enhanced earning capacity of the employee-spouse. Such a position runs counter to the fundamental goal of equitable distribution which is to fairly distribute property acquired during marriage by seeking "to effect upon divorce those sharing principles that motivate most couples during marriage." Sharp, *Equitable Distribution of Property in North Carolina: A Preliminary Analysis*, 61 N.C. L. Rev. 247 (1983).

Other jurisdictions remedy the potentially unfair consequences of cases like this one through recognition of "reimbursement alimony," *In re Marriage of Francis*, 442 N.W.2d 59, 64 (Iowa 1989) (alimony designed to compensate spouse for economic sacrifices directly enhancing other spouse's future earning capacity and does not end until full compensation achieved), and quasi-contractual actions, *Pyeatte v. Pyeatte*, 661 P.2d 196, 207 (Ariz. Ct. App. 1982) (court allowed restitution measure of recovery limited to contributions for "living expenses and direct educational expenses"). I. Ellman, P. Kurtz & K. Bartlett, Family Law ch. 3, at 330-49 (2d ed. 1991). In North Carolina, these potential solutions are arguably impermissible. *See* N.C.G.S. § 50-16.2 (1987) (fault ground required for alimony); *Britt v. Britt*, 320 N.C. 573, 577, 359 S.E.2d 467, 469 (1987), *overruled on other grounds*, 323 N.C. 559, 374 S.E.2d 385 (1988) (for unjust enrichment claim the "benefit must not be gratuitous"); *Suggs v. Norris*, 88 N.C. App. 539, 544, 364 S.E.2d 159, 163, *cert. denied*, 322 N.C. 486, 370 S.E.2d 236 (1988) (services rendered between spouses presumed gratuitous). In the absence of either our recognition of the increase in value of an employee-spouse's medical license due to marital contributions as marital property or a valid premarital or separation agreement dealing with the employee-spouse's enhanced earning capacity, a remedy for the contributing spouse currently available in North Carolina is to treat the employee-spouse's enhanced earning capacity as a distributional factor. N.C.G.S. § 50-20(c)(7) (1987 & Supp. 1991) (direct or indirect contribution to help educate or develop career

potential); *Geer v. Geer*, 84 N.C. App. 471, 478, 353 S.E.2d 427, 431 (1987) (career enhancing contributions); *Harris v. Harris*, 84 N.C. App. 353, 358-59, 352 S.E.2d 869, 873 (1987) (earning potential). When the marital estate is large, the trial court's discretion in its award based upon this distributional factor may very well lead to the equitable result intended by our equitable distribution statute. When the marital estate is small, however, treating as a distributional factor what *should* be distributed in the first place achieves nothing. Therefore, when the trial court determines that the increase in value of an employee-spouse's professional license is marital property, the trial court should distribute that increase. In such cases, however, the trial court should not also consider the increased value as a distributional factor.[2]

Accordingly, I agree that on remand the trial court should "eliminate the value of the goodwill and assign the proper percentage due to each spouse." However, in keeping with that general mandate, the trial court shall allow the parties to present new evidence which may be necessary for the trial court to identify, value, and distribute the increase in value, if any, of defendant-employee's medical license due to marital contributions, if any.

---

2. Likewise, when the trial court determines that goodwill is marital property, the trial court should distribute the value of the goodwill but should not also consider the owner-spouse's enhanced earning capacity as a distributional factor.